P. BEIERSDORF & CO., Inc. v. McGOHEY, Judge.

No. 21901.

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1951.

Decided Feb. 15, 1951.

Clark, Circuit Judge, dissented.

William Siskind, New York City, for petitioner.

Buckley & Buckley and John A. Danaher, all of Washington, D. C., for Judge McGohey.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. For purposes of this decision, the facts may be simply stated. Duke Laboratories, Inc., sued P. Beiersdorf & Co., Inc., in the State Court of Connecticut, asking a declaratory judgment that Duke had not infringed certain registered trademarks, that Duke owned these trade-marks although they had been issued to Beiersdorf, and that a contract between the parties (relative to the manufacture and distribution of the articles under the trademarks) was either invalid or had been completely performed. While this suit was pending, some two months later Beiersdorf sued Duke, in the court below, for infringement of the trade-marks, for breach of contract, and for an accounting. On motion of Duke, Judge McGohey entered an order staying the second suit until the completion of the trial of the Connecticut suit. See opinion, 92 F.Supp. 287. Beiersdorf has petitioned this court for leave to file a petition for a writ of mandamus directed to Judge McGohey, requiring him to vacate that stay order.

■ 2. Since, in practical effect, the stay may well prevent an exercise of the district court's jurisdiction and our own, we think we may properly entertain the petition for a writ of mandamus.[1]

■ 3. Judge Chase and I think that we must decide against petitioner on the merits because of this court's recent decision in Mottolese v. Kaufman, 2 Cir., 176 F.2d 301.

Judge Chase regards Mottolese as correctly decided. I dissented in that case, and still consider the decision wrong for reasons stated in detail in that dissent. Were I to join Judge Clark in the instant case, victory here would go to petitioner. But I believe that the considered rationale of the majority opinion in Mottolese was so sweeping that it should not be avoided merely on the basis of the different facts here. I feel, therefore, that I must be content with hoping that the Supreme Court, recognizing an "intra-Circuit conflict,"[2] will grant review and reverse this decision, which involves an important problem of federal jurisdiction.

CLARK, Circuit Judge (dissenting).

Although there is now seemingly some trend toward the breakdown of federal jurisdiction, this case in my understanding goes measurably beyond anything I have seen. Here the district judge claimed a wide power to pick and choose among cases to be heard federally; and our decision, however reluctantly reached, cedes to him that power.

Of course the earlier rule has been contra. Princess Lida v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285, citing cases; Moore's Federal Practice § 3.05, 1st Ed.; Moore's Commentary on the U.S. Judicial Code 403, 404, 1950. The reasons have seemed rather obvious. To the natural judicial hesitancy to refuse a particular suitor a remedy given by statute or constitution there are added highly practical considerations: the waste, if not frustration, of a trial to decide if there shall be a trial, particularly

---

1. In re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; Mottolese v. Kaufman, 2 Cir., 176 F.2d 301; Ex parte Edelstein, 2 Cir., 30 F.2d 636.

2. Dickinson v. Petroleum Corp., 338 U.S. 507, 508, 70 S.Ct. 322, cf. Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476.

at a time when the judge knows least about the case; the concern whether the rival's suit will furnish complete relief to the suitor; the doubt whether diligence in pressing adjudication should be penalized; the difficulty of finding adequate impartial grounds, not discriminatory among litigants, upon which to base refusal of jurisdiction. Such trends as have developed to the contrary seem to go on definitely canalized principles, limited to particular situations. Those are notably: the transfer to a more convenient forum, the refusal of declaratory relief when state jury actions are pending seeking affirmative relief against the federal suitor, and the holding of the federal case for definitive decision of state law by the appropriate state tribunal. The reasons for each of these steps viewed as isolated instances appear as rather appealing; and yet each has brought a chain of problems. Only a glance at the law reviews would indicate how even the new statute as to transfer to the more convenient forum has seemingly created more questions than it has solved. Practically speaking, too, there is fear lest the busy Southern District of New York is now spending an undue portion of its time merely considering whether it will hear particular cases. One might suggest that at least a period ensue when we attempt to digest this new facet of litigation before we take on further and more extensive problems.

In the case below we have relegated to state action one of the normal federal specialties in a field, that of trademarks, where federal jurisdiction has recently been extended by the Lanham Act, 15 U.S.C.A. §§ 1121, 1125, 1126(h) and (i). There may be grave doubt, under the Connecticut counterclaim provision which is narrower than the federal one, Clark, Code Pleading 121, 643, 647, 2d Ed.1947, whether the petitioner here can get in the state action all the relief to which it is entitled; perhaps that explains the

retention of some jurisdiction below with power to either party to "apply for further relief at the foot of this order." Part or all of the Connecticut proceedings may come to nothing anyhow, for in yet another action[1] the New York Court of Appeals, 301 N.Y. 707, 95 N.E.2d 55, has affirmed a holding that the contract here in dispute must first go to arbitration. The only ground the judge states for the exercise of his discretion is the crowded condition of the docket in the Southern District. (At the same time he did hold that there was a lack of showing by Duke of grounds sufficient to justify transfer of this case to the District of Connecticut.) Whether congestion alone is an adequate ground for denying jurisdiction seems doubtful; compare United States v. Kirkpatrick, 3 Cir., 186 F.2d 393, citing McCullough v. Cosgrave, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992. But the petitioner sets forth several considerations which suggest a good hope for an earlier trial below than in the Connecticut court. In any event that question of comparative congestion has not been tried. The newspapers of my place of residence in the State are full of reports of the congestion in the state courts and the rather drastic attempts now being made to cope with the situation there. But even had there been an exploration of the comparative burdens of these courts, with whatever results, I should still feel that no case had been made for denying an appeal to federal justice by this suitor.

We are held bound to approve this result because of Mottolese v. Kaufman, 2 Cir., 176 F.2d 301. Only on the theory that a crack in a rock does not greatly differ from a canyon can we so conclude. That case involved not a federal specialty, but stockholders' suits in the diversity jurisdiction of the court against directors for mismanagement. There, as has been so often held, the corporation is legally and practically the real and substantial plaintiff. Nine different state suits for the same

---

1. There appears to be still another action pending in the federal court in Connecticut against petitioner's officers apparently raising some of these issues; one wonders, indeed, why, amid this welter, the action below is the one chosen to be stayed.

relief had been started, the majority by the same counsel now present also in the federal litigation; these had already been consolidated in the state court. There are good reasons against two or more further tries in the federal courts (for this was a consolidation of two federal suits, now being pressed by an intervenor); the old equitable principle of bills of peace alone points to a proper reduction or elimination of purely harassing litigation, as the court was at pains to point out. Such repetitious suits furnish much more than merely an overnice distinction from this suitor's attempt to get full justice below. The district judge here apparently considered certain expressions of the opinion to go further, but this seems a highly doubtful reading in view of the court's emphasis upon the special grounds stated. Anything more was but an attempt to catalogue prior refusals of jurisdiction in answer to the powerful argument of the dissent against the novelty of the holding. In actual fact, this case, not the prior one, constitutes the really sweeping decision. And even if these prior expressions could be read more broadly than I feel sure was intended, I should regard it as a highly novel proposition that a minority of a large court, not sitting *en banc*, could bind all not merely on points actually decided, but upon possibilities not briefed or argued or carefully analyzed in any concrete setting.

Since the issue here goes to the heart of the district court's jurisdiction, I agree that the extraordinary remedy of mandamus is available to prevent what seems to me a claim of wholly arbitrary power to discriminate among litigants. But if this case does establish the power, then mandamus will no longer be available to curtail the trial court's discretion.[2] That is appropriate, for there will then be practically, as well as legally, no control over the trial judge's choice of suitors to favor; every case from the district below will of course show at least the bare minimum, which is all that we are requiring here, namely the general busy activity of this court.

Because the immediate issue of curtailment of federal relief to a seemingly deserving suitor seems to me serious enough, I have refrained from discussing the wider social and governmental implications involved in this steady, if not now precipitous, contraction of federal jurisdiction. But the ironic overtones do seem to me apparent. While events national and international do steadily press our people into a closer union, the national courts alone make their possibly gallant, but surely eventually futile, attempts to restore states-rightism.

I would grant the prayer of the petition.

---

2. Ex parte Fahey, 332 U.S. 258, 259, 260, 67 S.Ct. 1558, 91 L.Ed. 2041; Bank Line v. United States, 2 Cir., 163 F.2d 133;

Belships Co., Ltd. v. Republic of France, 2 Cir., 184 F.2d 119.