**UNIVERSAL GYPSUM OF GEORGIA, INC., Plaintiff,**

v.

**AMERICAN CYANAMID COMPANY, Defendant.**

**No. 74 Civ. 425 (JMC).**

United States District Court,
S. D. New York.

Feb. 25, 1975.

Javits & Javits, New York City (Harold J. Smith, New York City, of counsel), for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Edward N. Costikyan, Anthony M. Radice and Susan P. Carr, New York City, of counsel) for defendant.

## MEMORANDUM DECISION AND ORDER

CANNELLA, District Judge.

The defendant, American Cyanamid Company, seeks the entry of a stay of this action, which arises under our diversity of citizenship jurisdiction, pending the presentation and determination of a "simultaneously" commenced action involving the same facts and state law issues in the New York Supreme Court, New York County. As the Court finds that the interests of judicial economy, comity and federalism are best advanced by the entry of such a stay, the motion is hereby granted.

█  The power of the district court to enter a stay of its proceedings in favor of litigation pending in other forums has been settled beyond peradventure ever since Mr. Justice Cardozo declared in Landis v. North American Co., 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), that

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance (citations omitted). True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. . . . Considerations such as these, however, are counsels of moderation rather than limitations upon power.

The existence of this authority notwithstanding, the entry of the requested stay requires this Court to refrain from exercising its otherwise valid *in personam* jurisdiction and to defer to another court the resolution of a controversy which is otherwise properly within the ambit of its adjudicative powers. Thus, our deferral of the resolution of the instant controversy to the New York state court requires the invocation of one of the abstention doctrines—one which is not uniformly recognized, namely, that of "abstaining" in a run-of-the-mill diversity action where a state court action raising the same issues is simultaneously pending.[1] As was recently stated by one appellate court:

> Some courts of appeals allow a federal district court the discretion to stay its proceedings in deference to a pending state court action. *See* Aetna State Bank v. Altheimer, 430 F.2d 750, 755–56 (7th Cir. 1970); Amdur v. Lizars, 372 F.2d 103, 106–07 (4th Cir. 1967). (Citation omitted). Other federal appellate courts, however, express the view that a federal district court should not stay its hand in deference to a pending state court action except in exceptional circumstances where resort to state court serves an important interest in the orderly administration of justice. *See* Mach-Tronics, Inc. v.

1. Other abstention doctrines, such as that formulated in Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), are uniformly applied by all federal courts. *See, e. g.,* Harris County Comm'rs

Court v. Moore, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); and our recent decision in Liquifin Aktiengesellschaft v. Brennan, 383 F.Supp. 978, 980–82 (S.D.N.Y. 1974).

Zirpoli, 316 F.2d 820, 826–28 (9th Cir. 1963); Ermentrout v. Commonwealth Oil Co., 220 F.2d 527, 530 (5th ·Cir. 1955). *See generally* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1838 (1972).

Applegate v. Devitt, 509 F.2d 106, 108–09 (8 Cir. 1975). *See also* PPG Industries, Inc. v. Continental Oil Co., 478 F.2d 674 (5 Cir. 1973) (recognizing the propriety of a stay of the nature here sought); Nigro v. Blumberg, 373 F. Supp. 1206 (E.D. Pa. 1974) (granting stay); Crawford v. Seaboard Coast Line R.R. Co., 286 F.Supp. 556, 557–58 (S.D. Ga.1968);[2] *but see,* England v. Board of Medical Examiners, 375 U.S. 411, 430 n. 2, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (Douglas, J. concurring);[3] C. Wright, Law of Federal Courts § 52 at 205 (2d ed. 1970);[4] Note, 51 Tex.L.Rev. 1252 (1973). *See generally,* H.M. Hart & H. Wechsler, The Federal Courts and The Federal System 1257–61 (2 ed. P. Bator, P. Mishkin, D. Shapiro and H. Wechsler 1973); Annot., 5 ALR Fed. 10 (1970); Note, Stays of Federal Proceedings in Deference to Concurrently Pending State Court Suits, 60 Colum.L.Rev. 684 (1960); Note, Power to Decline the Exercise of Federal Jurisdiction, 37 Minn. L.Rev. 46 (1952); Note, Power to Stay Federal Proceedings Pending Termination of Concurrent State Litigation, 59 Yale L. J. 978 (1950).

■ In this Circuit, at least since 1949, the law has been clear. In Mottolese v. Kaufman, 176 F.2d 301, 302 (2 Cir. 1949), Judge Learned Hand declared:

> It is probably true that originally the statutory privilege of access to a federal court was regarded as absolute and indefeasible, no matter whether its exercise resulted in inconvenience, delay and expense to the defendant. There can be no doubt, however, that this is no longer true. (Footnote omitted).

Hence, the district court is possessed of the power to stay its proceedings when there exists a simultaneously pending state court action in which the same dispute is being litigated by the same parties—a power which may be exercised in the court's sound discretion. *See, e. g.,* Simmons v. Wetherell, 472 F.2d 509, 512 (2 Cir.), cert. denied, 412 U.S. 940, 93 S.Ct. 2777, 37 L.Ed.2d 399 (1973); Nederlandse Erts-Tankersmaatschappij N. V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2 Cir. 1964); Milk Drivers & Dairy Employees Union Local No. 338 v. Dairymen's League Cooperative Association, Inc., 304 F.2d 913, 915 (2

---

2. In *Crawford*, the court stated that "[w]hile parties have a right to this forum, granted under the diversity statute, they have no right to engage the court or their adversaries in wasteful activities when another forum is available where claimed grievances may be fully and fairly heard and a disposition made upon the merits." 286 F.Supp. at 557.

3. In *England*, Justice Douglas declared:
   Some federal courts have used the [abstention] doctrine to shuttle over to state courts cases properly in the federal court yet not involving constitutional issues dependent on the meaning of state law (see Mottolese v. Kaufman, 2 Cir., 176 F.2d 301; Beiersdorf & Co. v. McGohey, 2 Cir., 187 F.2d 14)—decisions which baldly deny a suitor the remedy granted by Congress because it is not convenient for the district judge to decide the case.
   375 U.S. at 430 n. 2, 84 S.Ct. at 472.

4. Professor Wright is vehement in his opposition to the entry of stays of the nature here sought.

   [I]t had been thought to be the rule that the mere pendency of an action in personam in state court would not require, nor even permit, a federal court to refuse to hear an action or to stay an action, and that instead both state and federal actions should go forward until one of them results in a judgment that might be asserted as res judicata in the other. Two decisions of the Second Circuit, with some support elsewhere, have cast doubt even on that proposition. . . . Though these decisions have had some support from commentators, they go beyond anything that has been sanctioned by the Supreme Court, and beyond anything required by the demands of federalism that are at the heart of the abstention doctrines. (Footnotes omitted).

Cir. 1962); P. Beiersdorf & Co. v. Mc-Gohey, 187 F.2d 14 (2 Cir. 1951); Loeb v. Whittaker Corp., 333 F.Supp. 484, 489 (S.D.N.Y.1971); Assmann v. Treglia, 318 F.Supp. 1040 (D.Conn.1970); Witmar Salvage Corp. v. C. W. Blakeslee & Sons, Inc., 308 F.Supp. 395 (S.D.N.Y. 1969); Rosenfeld v. Schwitzer Corp., 251 F.Supp. 758, 763–64 (S.D.N.Y. 1966); Mitter v. Massa, 237 F.Supp. 915, 918 (S.D.N.Y.1965); Weiss v. Doyle, 178 F.Supp. 566, 569–70 (S.D.N.Y.1959); Kamen Soap Products Co. v. Struthers Wells Corp., 159 F.Supp. 706, 712 (S.D.N.Y.1959); Weisfeld v. Spartans Industries, Inc., 58 F.R.D. 570, 575–77 (S.D.N.Y.1972); cf., Finkelstein v. Wolf, 73 Civ. 5150 (MEF) (S.D.N.Y. Nov. 27, 1974) (noted in [Current] CCH Fed.Sec.L.Rep. ¶ 94,885).

In his recent, well-reasoned decision in Nigro v. Blumberg, 373 F.Supp. 1206, 1212–13 (E.D.Pa.1974), Judge Fogel listed seven factors pertaining to the determination of an application for a stay in a case such as this.

> [W]e believe . . . that the following factors are pertinent to a district court's decision to exercise its discretion in favor of staying proceedings before it: (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

We find such criteria to present an appropriate standard of analysis and, keeping them in mind, we turn to consider the matter at bar.

The instant case and that commenced by Cyanamid in the state court both concern the same dispute arising out of a contract pursuant to which Universal Gypsum was to construct a waste treatment facility at Cyanamid's titanium dioxide plant in Savannah, Georgia. Both turn upon the same corpus of New York contract law. Although Cyanamid's state court action was initially removed to this Court by Universal Gypsum, this Court, on July 8, 1974, remanded that proceeding to the state court upon a finding that Gypsum was a citizen of New York for purposes of the diversity statute and, hence, was barred from removing the action to federal court. American Cyanamid Co. v. Universal Gypsum of Georgia, Inc., 74 Civ. 798 (JMC) (S.D.N.Y. July 8, 1974) (Endorsement). The complaint and the answer and counterclaim herein are the mirror images of the pleadings interposed by the parties in the state court.[5] Clearly, both this action and that now pending in the New York Supreme Court involve the same legal and factual issues. Their resolution will be controlled by the applicable precedents of New York contract law whether the trial is had in this courthouse or across the street.

While the present action might otherwise be regarded as a rather run-of-the-mill diversity action properly subject to adjudication in the federal court, the existence of numerous factors fully warrant the entry of the requested stay in the instant case. The movant has suggested seven factors favoring the entry of a stay (see, Costikyan Affidavit at 6–7), however, only several need be discussed at length. First, the actions both here and in the state court turn exclusively upon issues of New York law. While federal courts are not unadept nor untrained in dealing with state law problems and in resolving state law controversies, such issues are more appropriately litigated in the New York

---

5. It is true that Gypsum has not prayed for certain of the affirmative relief in the state court which it seeks herein. This matter is easily corrected in view of the liberal provisions contained in CPLR 3025(b). Indeed, Cyanamid has consented "to Gypsum's interposition of those [affirmative] allegations as a counterclaim in the State action" in the instant moving papers. (Costikyan Affidavit of October 29, 1974 at 5).

courts where an authoritative construction of New York law can be obtained. *Cf.*, Tobin v. Slutsky, 506 F.2d 1097, 1098 (2 Cir. 1974) (compare, the opinion of Oakes, J., concurring. *Id.* at 1103.). Second, the unimpaired continuation of this litigation will unnecessarily duplicate the parallel proceedings in the state court. This Court has not, to this point in time, invested any substantial judicial energy with regard to the merits of this litigation and both the state and federal actions stand in identical procedural positions. We cannot perceive how Gypsum might be prejudiced by the entry of the requested stay —it will be afforded a full and fair opportunity to litigate all issues before a highly competent tribunal whose expertise in New York law must be regarded as equal to, if not greater than that of this Court.

The third (and perhaps most significant) factor which must be considered on this motion is that Gypsum's invocation of diversity jurisdiction is without support in the primary purposes and theoretical bases of that grant of adjudicative authority. While the present statutory formulation (28 U.S.C. § 1332) does not bar an in-state plaintiff (such as Gypsum) from invoking the district court's diversity jurisdiction, this anomaly in the law has been criticized by leading commentators and such criticism is fully warranted. *See, e.g.,* H. Friendly, Federal Jurisdiction: A General View at 139–52 (1973); ALI Study of the Division of Jurisdiction between State and Federal Courts § 1302(a) and Commentary at 123–25 (1969).[6] *See also,* Tobin v. Slutsky, *supra.* We take the opportunity of this decision to add our voice to that of Judge Friendly and others who seek proper contours for federal diversity ju-

risdiction. The stay of this action is but a small step toward a more adequate allocation of judicial resources and manpower. In the context of this case, the assignment of this controversy to the New York courts for resolution will justly advance the interests of the parties, as well as those of proper resource allocation in the respective courts—a result both available and proper under existing law.

The foregoing factors being extant, Gypsum's argument "that if this court were to grant the stay, it would mean that this court would be unilaterally amending the federal diversity statute by giving the district court arbitrary power to reject almost any diversity case solely because no federal law is involved" (Memorandum of Law in Opposition at 17–18) must be found to badly miss its mark. Plaintiff seems to suggest that since we have proper diversity jurisdiction, we *must* exercise it and adjudicate the matter. Whatever validity such a view might once have had, it no longer accurately represents the state of the law. Judge Learned Hand concluded "that this is no longer true" more than twenty-five years ago (Mottolese v. Kaufman, 176 F.2d at 302) and the courts in this circuit and district have recognized the invalidity of the proposition ever since. *See* cases collected at pp. 826–827, *supra.*

In contrast to Gypsum's stance, Cyanamid has advanced numerous policy considerations which correctly favor a declination of the exercise of jurisdiction in the matter at bar. In addition to the factors discussed above, the obvious realization that a multiplicity of actions is inappropriate in this age of overcrowded dockets in all courts and that the attendant wasteful duplication of judicial energies should not be en-

---

6. The commentary contained in the ALI study (at p. 124) highlights this folly:

    The right of an in-state plaintiff to institute a diversity action against an out-of-state defendant, although it dates back to the first Judiciary Act, is not responsive to any acceptable justification for diversi-

ty jurisdiction. The in-stater can hardly be heard to ask the federal government to spare him from litigation in the courts of his own state. Any prejudice which he may fear is not of the kind against which the diversity jurisdiction was intended to protect.

couraged by any court, is well brought to bear in the instant matter. *See, e. g.,* Weiss v. Doyle, 178 F.Supp. at 570. A race to obtain the *res judicata* benefits of a judgment in one court so that it may later be invoked in another forum is not to be sanctioned. *See,* Currie, The Federal Courts and the American Law Institute (II), 36 U.Chi.L.Rev. 268, 335 (1969). Principles of comity and federalism, essential to the proper assignment of judicial functions within our federal-state adjudicative system, are always to be fostered by federal courts. In short, each of the factors recognized by Judge Fogel, supra, bear in favor of the entry of the requested stay.

On balance, the Court in this instance, acts in a fashion which is no more "arbitrary" or "unilateral" than that engaged in when other, more ordinary, abstention doctrines are invoked. *See e. g.,* Railroad Comm'n v. Pullman Co., *supra. See generally,* 1A (part 2) J. Moore, Federal Practice ¶¶ 0.203[1] and 0.203[2] at 2101 et seq. (2 ed. 1974); C. Wright, Law of Federal Courts § 52 at 196–208. The precise point of all abstention doctrines is that notwithstanding a valid jurisdictional predicate, the exercise of such jurisdiction should be declined in deference to policy considerations of comity, federalism and judicial economy.[7]

> We believe that public policy considerations and certain well-defined principles may justify the exercise of a federal court's discretion to stay proceedings, just as such considerations justify a federal court's abstention from the exercise of its jurisdiction in certain limited, but nevertheless recognized, circumstances. When the duty imposed upon us to proceed with a case over which we have jurisdiction conflicts with the best interests of the public, of the courts, and of all the litigants involved in the matter, notwithstanding plaintiff's unconvincing plea to the contrary, we conclude that, under such circumstances, our power and discretion should be exercised in favor of granting a stay.

Nigro v. Blumberg, 373 F.Supp. at 1210. As Professor Kurland has stated:

> It hardly seems appropriate that, with our judicial resources taxed to the extent they are, actions should proceed simultaneously in both courts [state and federal actions raising the same questions] with the judgment in one ultimately to be utilized as res judicata in the second. . . . My suggestion, therefore, is that the appropriate method for dealing with the problem is by a stay of proceedings in the second court. . . . [C]ertainly proceedings in two courts to resolve the same questions between the same parties is a patent abuse when the Chief Justice of the United States and the Chief Justices of most of our industrial states continually testify to the immense problems of judicial administration which exist because the courts of their respective jurisdictions are so heavily overburdened with litigation.

Kurland, Toward A Co-Operative Judicial Federalism, 24 F.R.D. 481, 491–92 (1959). *See also,* Currie, *supra,* 36 U. Chi.L.Rev. at 335.

While it is not clear which of the actions between these parties is to be considered the "second" action for purposes of Professor Kurland's formulation (the actions are considered to have been simultaneously brought, although service of the summons and complaint in the state action preceded service in the federal action by five days), it is manifestly clear to this Court which forum is

---

7. Indeed, we have been instructed that even in those instances where constitutional rights are likely to be trammeled upon in state court proceedings, our hand is to be stayed during their pendency so as to foster comity and federalism. *See, e. g.,* Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.

Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

best suited to resolve the dispute between them. The simultaneity of commencement which is presented on these facts is not a significant factor (if one at all) in favor of denial of the requested stay when the other factors, such as the applicable law, comity and judicial economy, weigh so strongly against the uninhibited continuance of this suit.

Notwithstanding the criticism which the sort of abstention now engaged in by the Court has engendered at the hands of Mr. Justice Douglas, Professor Wright, Judges Clark (P. Beiersdorf & Co. v. McGohey, 187 F.2d at 15–17 (dissenting opinion)), Frank (Mottolese v. Kaufman, 176 F.2d at 304–10 (dissenting opinion)) and others, we believe it wholly justified and appropriate both in this particular case and as an exercise of discretion in general. We find that the deference of federal courts to pending state court litigation which concerns identical issues between identical parties is well rooted in principles of the sound administration of justice. The relevant policy considerations are of greater moment today, at a time when our dockets are burgeoning with matters peculiar to federal courts. Litigants who have no other forum available to them should not be asked to stand aside while we engage in diversity litigation which is duplicative of that pending in a state court of competent jurisdiction. As has been stated by Judge Weinfeld:

> While parties have a right to this forum, granted under the diversity statute, they have no right to engage the Court or their adversaries in wasteful activities when another forum is available where claimed grievances may be fully and fairly heard and a disposition made upon the merits. The public interest requires that the Court "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

Weiss v. Doyle, 178 F.Supp. at 570 (footnotes omitted). *See also*, Crawford v. Seaboard Coast Line R.R. Co., 286 F.Supp. at 577–58.

Thus, when a federal diversity action raising only state law issues has been commenced by an in-state plaintiff at a time when a previously or simultaneously commenced action is pending in the courts of his own state involving the same parties and issues, the district court, absent some persuasive reason for contrary action, should stay the proceedings before it until the state court has had the opportunity to pass upon the claim. Principles of comity, federalism and, perhaps most importantly, sound, adequate and economical allocation of judicial resources and effort could not tolerate a result different from that which we now reach. In sum,

> [w]e believe that recognition of a public policy against unnecessarily burdening two courts with concurrent and duplicative litigation does not threaten the integrity of the federal-state judicial relationship; to the contrary, the exercise of such judicial restraint advances the objective of comity between federal and state courts.

Nigro v. Blumberg, 373 F.Supp. at 1212.

Accordingly, the defendant's motion is hereby granted and it is hereby ordered that this action, 74 Civ. 425 (JMC), be, and hereby is, stayed pending the hearing and determination of the action between these same parties now pending in the New York Supreme Court, New York County (Index No. 1335/74) (and any appellate review of the judgment entered therein). It is hereby further ordered that this action be, and it hereby is, transferred to the suspense docket of this court pursuant to Rule 20(A) of the Calendar Rules.

It is so ordered.