**BETHLEHEM STEEL CORPORATION, Plaintiff,**

v.

**TISHMAN REALTY & CONSTRUCTION CO., INC., Defendant.**

**No. 75 Civ. 511 (MP).**

United States District Court, S. D. New York.

Nov. 24, 1975.

Hynes & Diamond, New York City, for plaintiff, by Leslie A. Hynes and Ralph C. Kreimer, New York City, of counsel.

Sol Pottish, New York City, and Howard I. Friedman of Loeb & Loeb, Los Angeles, Cal., of counsel, for defendant.

## MEMORANDUM

POLLACK, District Judge.

Defendant seeks a transfer of this suit to the Central District of California on the grounds of convenience of its witnesses and the interests of justice, 28 U.S.C. § 1404(a). The return date of the motion and decision thereon have been successively adjourned from date to date at the express request of both parties to permit certain discussions to be carried on.

This is a diversity suit by a subcontractor of the structural steel work against the prime contractor and builder of a building and underground garage complex located in the Century City area of Los Angeles, California. Plaintiff sues to collect moneys claimed to be due it under its subcontracts with the defendant for the value of extras and changes in the original specifications ordered by defendant for the project. According to the plaintiff, the work was performed but not paid for as provided in the subcontracts. It is claimed by plaintiff that the extra and additional work, costs and expenses and delays encountered were due to the inadequacy and defects in the design as depicted and required by the Prime Contract between defendant and the owner and the specifications based thereon, for which the plaintiff was not responsible.

The defendant, admitting that it ordered the extra and additional work, denies liability and contends variously that its payments made heretofore to the plaintiff have either covered the items sued for; or, in the case of plaintiff's first claim for a balance of $53,686.90 on the March 9, 1970 subcontract, that plaintiff is estopped for lack of a timely demand and submission of this claim for payment.

By way of counterclaim, the defendant charges that the extra and additional work it ordered were made necessary by plaintiff's alleged defective performance of subcontracts, that plaintiff failed to meet agreed progress schedules and completion dates, thereby upsetting project scheduling to defendant's damage. The defendant's papers claim that the structure failed to respond in the manner predicted by the engineering plan at repeated intervals in the course of the construction, and that plaintiff was at fault in connection therewith.

In respect to the plaintiff's Fifth and Sixth claims in the complaint (the bulk of the amount in suit) defendant contends that no actual definitive contract was finalized by the parties but the job went forward nonetheless leaving "a substantial question as to what the actual terms and conditions of the resulting contracts are" (sic). The Fifth claim asserts that the parties did reach a contract, a "Structural Steel Subcontract" calling for payment of $19,695,-000 by defendant of which $16,211,-188.19 was paid on requisitions leaving the balance unpaid. The defendant's senior vice-president in charge of the project has stated hereon that the controversy between the parties does not essentially turn on the construction of contractual documents or whether the requisitions have been paid. This removes those questions as material mat-

ter in support of a transfer of the suit, if indeed they could so be regarded.

The plaintiff is a Delaware corporation with its principal place of business in Bethlehem, Pennsylvania, and maintains offices for the conduct of business in this District. The defendant is a New York corporation with its principal office and place of business in New York City. Both parties are large corporations and have offices and plants in various localities throughout the country, including the Central District of California. This Court therefore has personal jurisdiction over the parties, jurisdiction of the subject matter and the venue is proper.

Plainly, wherever the trial of this case is to be held, the transportation of records and some witnesses will be required, and each party will necessarily suffer some inconvenience.

The defendant in its papers has assembled an imposing statement of a staggering array of witnesses (36) to be questioned before or at trial. However, when consideration is given to the materiality of their projected posture, the list seems overbroad and the purpose of using many of these witnesses seems dubious. The underlying issue presented by the case appears to turn on the responsibility for deficiency in the plans and specifications. They were prepared by the owner. Its architect and the personnel employed by the architect who created the original building design are located in Troy, Michigan—closer to New York than California. The testimony of the various project inspectors and others located in California who functioned generally on the project does not necessarily appear to be related to the core of the controversy to be resolved, except possibly in a tangential way. Theirs is not testimony that would seem to raise issues of credibility requiring an evaluation of demeanor evidence by the trier of the fact. Similarly, there seems little need for special ac-

quaintance with the locale or an on-site inspection by the Court, as has been suggested. The project has been completed—and whatever it was that lies at the bottom of this controversy has been cured.

The defendant visualizes an inordinately lengthy trial of this case which would keep out-of-state witnesses here accordingly. The case will occupy "several months of the Court's time", warns the defendant. Certainly, that is not a ground for shifting the case to another District. The Court takes a dim view of the factual basis for the asserted duration of trial in this case. Efficient and reasonable preparation for trial consistent with the responsibilities of counsel as officers of the Court with an eye to resolution, not proliferation of the controversy, should make for an entirely manageable and relatively brief trial of those issues which are fairly and reasonably controvertible. There is no excuse for conducting litigation as an end in itself or means to hamper, delay or avoid a resolution of the merits of a commercial dispute. Since no such purpose is discernible herein, the Court is confident that there is no need to transfer the case elsewhere to convenience witnesses because the trial will be protracted.

The suits which were brought by plaintiff in the Superior Court of California against the owner of the project and others including this defendant in protection of and to foreclose on plaintiff's mechanics' liens were dictated by the time limits for such actions under California law. Those suits were commenced four months *after* the pendency of this action; they are not pending in another federal court; they could not be consolidated in a federal court with the instant claims. The mechanics' lien cases do not tip the balance of convenience in defendant's favor on this motion.

■■ The burden is on the defendant to show that the convenience of *both*

parties or the interests of justice will be better served in the other District. That burden has not been carried by the defendant. The localization of the proofs to the essentials of the issues properly to be litigated and material to decision will not inconvenience or embarrass the defendant or its material witnesses to that degree where it can be said that discretion should be exercised to transfer the case. The plaintiff avers with sufficient indication of reliability thereof that it will be inconvenienced by a transfer. There does not seem to be any risk that interests of justice will be prejudiced by a trial in this District and the balance of convenience does not preponderate in defendant's favor to the extent that the plaintiff's choice of forum should be nullified.

The motion to transfer to another District is denied.

So ordered.