**BETHLEHEM STEEL CORPORATION, Plaintiff,**

v.

**TISHMAN REALTY & CONSTRUCTION CO., INC., Defendant.**

No. 75 Civ. 511(MP).

United States District Court, S. D. New York.

July 23, 1976.

Hynes & Diamond, by Leslie A. Hynes, and Ralph C. Kreimer, New York City, for plaintiff.

Rosenman, Colin, Freund, Lewis & Cohen, by Max Freund, and David Cohen, New York City, for defendant.

OPINION

POLLACK, District Judge.

This is a diversity suit involving a claim for the recovery by the plaintiff, a subcontractor, of moneys due from the defendant, a builder, under five separate subcontracts entered into between the parties pertaining to construction of two forty-four story office buildings, a subterranean garage and an entertainment center in Los Angeles, California, called the California Theme Towers Project.

Defendant (hereafter "Tishman"),[1] moves pursuant to Rules 1 and 12, Fed.R.Civ.P., to stay this action pending a determination of five subsequently commenced suits brought by plaintiff against Tishman in California Superior Court for the County of Los Angeles allegedly seeking identical relief as that sought in this action on the same construction subcontracts that are at issue here. In the alternative, Tishman, pursuant to Rule 42(a), Fed.R.Civ.P., seeks consolidation for purposes of pre-trial discovery and trial of the common issues in this action with those in a separate suit it has filed in this Court against the owners of the construction project involved here. *Tishman Realty & Construction Co., Inc. v. Delta Towers Joint Venture*, 72 F.R.D. 30, Dkt. No. 76–714, (S.D.N.Y., July 23, 1976). As a final alternative motion, it asks that the owners of the project be impleaded in this action as third party defendants.

Plaintiff (hereafter "Bethlehem"),[2] the subcontractor responsible for providing and erecting steel for the project, opposes a stay of this action and cross-moves for partial

---

1. At the time of the filing of this opinion and all times relevant to the subcontracts *sub judice,* Tishman is and was a corporation organized under the laws of and doing business in New York. However, as noted by plaintiff's latest submission, a recent public announcement by officers of Tishman indicates that the company is planning to liquidate its corporation and con-

vert itself into a partnership. Reports of the announcement submitted by plaintiff indicate that the conversion will be accompanied by a sale of many, if not all, of the company's buildings.

2. Bethlehem is a Delaware corporation with its principal office in Pennsylvania.

summary judgment in the amount of $3,483,881.81 as an admitted contract balance on the largest of the five subcontracts that form the basis of this action.

The defendants in the companion case in this Court (hereafter "the owners" and "the second action")[3] seek a stay of that action pending the same California litigation.

After wading through the flood of supporting and opposing papers, several inches thick, and for the reasons that appear below, the Court has determined that a stay of this case may be had on condition that Tishman post security as indicated hereafter; and that partial summary judgment will be withheld, without prejudice to renewal on proper papers. The Court also holds in Tishman's suit against the owners that the same will be stayed pending a determination of the California actions previously mentioned. As a result, Tishman's motions for consolidation and impleader need not be reached.

## I.

The California Theme Towers Project was commenced in 1969 and not completed until October of 1975.

The complaint herein (filed February of 1975) contains six claims, four of which seek moneys allegedly due Bethlehem for extra and additional work done pursuant to four subcontracts with Tishman. Those subcontracts called for the fabrication and erection of reinforcing steel in the Theme Towers complex. Bethlehem asserts that the extra and additional work on this reinforcing steel was caused by defective specifications in plans called for under the prime contract between Tishman and the owners, plans for which Bethlehem was not responsible.

The fifth and sixth claims in the complaint involve an alleged fifth subcontract for the fabrication and erection of structural steel, a subcontract which is unsigned and the terms of which remain at least partially undetermined. The better part of the damages sought by Bethlehem result from the alleged breach of this subcontract and are sought under the fifth and sixth claims. In the fifth claim, plaintiff sues on an alleged subcontract directly, claiming it is owed a contract balance of $3,483,811.81 and extra and additional work payments totalling $801,153.45. Under a quasi-contractual theory, the same damages are sought in the sixth claim as payments for work done and goods sold and delivered. In its crossmotion here, Bethlehem seeks partial summary judgment, apparently on the contract theory set out in the fifth claim, for the contract balance of $3,483,811.81.

In its initial answer, Tishman admitted that it ordered extra and additional work under the five subcontracts but denied liability and asserted that previous payments to Bethlehem comprise all the payment required under the subcontracts. As affirmative defenses going to Bethlehem's first claim, Tishman contended that by failing to make timely demand for extra and additional work payments Bethlehem waived and is estopped from asserting the right to such payments.

In this initial answer, Tishman also asserted a counterclaim for backcharges alleging that all extra and additional work was caused by Bethlehem's defective performance and failure to meet progress schedules. On this and previous motions, Tishman has heatedly and persistently contended that it was an innocent party with respect to the delays and extra and additional work that apparently plagued the

---

**3.** Initially, the construction project was owned and developed by Century City, Inc., a California concern and a subsidiary of Aluminum Company of America (Alcoa). Ownership of the project was subsequently assigned to a partnership called Delta Towers and consisting of Lot 8 (another Alcoa subsidiary) and the Prudential Insurance Co. of America (whose subsidiary, PIC Realty Corp. preceded it as a partner in the joint venture). All of the above-named entities are named as defendants in the second action in this Court. For a brief description of the issues involved in that action see the contemporaneously filed opinion in that action. *Tishman Realty & Construction Co., Inc. v. Delta Towers Joint Venture,* —— F.R.D. 30, Dkt. No. 76–714 (S.D.N.Y., July 23, 1976).

project; i. e., that such problems were caused either by Bethlehem's alleged defective performance or the owner's allegedly defective plans.

In June of 1975, Bethlehem commenced the five separate actions in Los Angeles County Superior Court, mentioned above, seeking the same relief against Tishman that is sought in this suit and also naming Prudential, Delta Towers, Lot 8 and PIC Realty Corporation as defendants. These actions were brought to foreclose Bethlehem's mechanic's liens on the real property on which the project rests. The filing of the California suits was timed to avoid the bar of California's statute of limitations on the claims. This Court has been advised that virtually all parties involved in the various construction project disputes, including the Michigan architects over whom this Court would apparently have no jurisdiction, have joined in the California suits. In addition, another Tishman subcontractor, Federal Steel Corporation, has also commenced mechanic's lien actions in Los Angeles Superior Court[4] and two other Tishman subcontractors have filed actions in Los Angeles Superior Court. One such action, by Western Air & Refrigeration, Inc., has been settled, but the other, by Berg Electric Corporation, remains active.

In June of 1975, Tishman sought transfer of this action to the federal district court of the Central District of California pursuant to 28 U.S.C. § 1404(a). After granting a number of continuances requested by the parties, the motion was heard and denied. *Bethlehem Steel Corp. v. Tishman Realty & Construction Co., Inc.,* 404 F.Supp. 1285 (S.D.N.Y.1975).

Then, in January of this year, Tishman moved to implead the owners and to amend its answer to Bethlehem's complaint in various respects. The impleader motion was denied, but the Court noted that Tishman was at liberty to commence a separate action and subsequently move for consolidation. Leave to move again for impleader was granted in the event that such a consol-

idation motion was denied. In February of this year Tishman filed the above-described companion case against the owners.

With respect to the motion to amend the answer, the Court refused permission to change the originally filed admissions and denials, but permitted Tishman to file additional affirmative defenses (to wit: the defense of statute of frauds to Bethlehem's fifth and sixth claims, the defense that Bethlehem's claims ought to be asserted against Tishman's "disclosed principal," and the defense that the contract does not authorize any recovery) and one additional counterclaim (to wit: the claim that Bethlehem caused damage to Tishman by materially breaching its alleged agreement with Tishman not to file any action on a mechanic's lien). Tishman has filed amendments to its answer consistent with this ruling. It now seeks, pursuant to its counterclaims, damages "in excess of $2,600,000."

## II.

Inasmuch as the question of a stay of this case depends at least in part on the result of plaintiff's cross-motion, the Court will consider the latter motion first.

On its cross-motion, Bethlehem argues that the purported structural steel contract constitutes a binding written contract between it and Tishman, and it seeks entry of a final, partial summary judgment in the amount of the balance left unpaid (i. e., $3,483,811.81) or, in alternative, that balance less what it considers Tishman's maximum claimed off-sets (i. e., $3,483,811.81 minus $2,600,000. or $883,811.81).

Accordingly, it would appear that Bethlehem is pressing its contractual remedies, rather than the quasi-contractual remedies sought in its sixth claim. However, since its papers when considered in juxtaposition with its complaint are vague enough to leave doubt on this score, the Court will consider this motion under both Bethlehem's fifth and sixth claims.

---

**4.** In one of those actions, Delta Towers has filed a cross-complaint against Tishman for breach of the construction contract and indemnification.

Despite the voluminous record made on this and other motions in this case, the parties have yet to delineate their respective contentions with respect to the existence of a structural steel contract and the sum total of its terms and conditions. There are, nonetheless, a few contentions concerning this fifth subcontract which a search of the record indicates are uncontested.[5]

Although the parties engaged in correspondence and oral discussions in an effort to finalize their agreement on the structural steel portion of this project and although that portion of the project and the project itself have been completed, a final version of the alleged fifth subcontract was never formally agreed to and signed. Negotiations on the structural steel work were begun by an offer from Bethlehem dated March 22, 1972. That offer lapsed on April 3, 1972 and Bethlehem then wrote Tishman requesting authorization to begin the structural steel work "pending execution of a mutually satisfactory subcontract agreement."

On April 19, 1972 Tishman wrote Bethlehem informing them that a formal contract was being prepared and that

. . . this letter will be sufficient for you to start full production in rolling, detailing, scheduling, etc. for the job until the formal contract itself is executed.

A letter from Bethlehem dated April 26, 1972 acknowledged receipt of this authorization and declared that Bethlehem would "be pleased to enter into a mutually satisfactory contract covering this project."

Tishman's proposed contract "in final form" was forwarded to Bethlehem on· October 20, 1972. Tishman contends, and Bethlehem apparently agrees, that this contract was essentially Tishman's standard form contract, versions of which were also used as the first four subcontracts concerning the reinforcing steel work. On Novem-

ber 30, 1972 Bethlehem submitted to Tishman a proposed "Rider A" which disagreed with or modified a large number of the provisions in the contract proffered by Tishman. A Tishman letter to Bethlehem dated January 22, 1973 agreed to some of the proposed alterations in the Rider, disagreed with others and offered a number of counterproposals. Thereafter, correspondence and oral discussions over the contract continued throughout the project's construction.

One source of disagreement was the provision concerning the percentage of the contract price Tishman would be permitted to retain pending the completion of the project. While Bethlehem bargained for a retainage of 10%, Tishman held out for and actually retained 15%. However, the parties did agree to a standard retainage of some kind and, in addition to that retainage, Tishman's right to "retain a sum sufficient, in its opinion, to complete the work in accordance with the terms of this contract." [6]

Agreement was never reached on the timing of Tishman's acceptance but it was agreed that payment would be conditioned on a general release from Bethlehem and "satisfactory proof" that all claims, taxes or liens growing out of Bethlehem's work were released. In addition, it was agreed that the time set out in the agreement for Bethlehem's performance was "of the essence" and that Tishman's approval of "delayed finishing" would not constitute a waiver of any claim for damages.

The remainder of the fifth subcontract, if any, remains a mystery. Their submissions indicate that the parties agree that this subcontract was far more extensive than the above description indicates (as indeed it must have been), but neither party bothers to set out or identify the nature of other agreed to provisions. For example, included in a sheaf of papers submitted to the

---

**5.** The only meaningful source of uncontested facts available to the Court in this voluminous record has been Bethlehem's statement that the description of the dealings of the parties provided by an affidavit sworn to June 3, 1976 by

Thomas J. O'Hara, Jr., a Tishman vice president, is "substantially" accurate.

**6.** Art. 35 of the Tishman Standard Form Contract.

Court which appear to be Tishman's standard form and Bethlehem's riders (but which are all dated April 19, 1972) is a provision which permits withholding by Tishman under the following conditions:

35(b) The Builder [Tishman] may withhold payment to the Contractor [Bethlehem] to comply fully with any requirement of this contract, including the failure of the Contractor to make payments to subcontractors [of Bethlehem] or for material or labor, (2) the failure of the Contractor to prevent the filing of claims or to avoid the reasonable probability of the filing of claims against the Builder, the project or the Contractor by reason of acts of the Contractor, and (3) damage to another Contractor.

Neither party on this motion has made any attempt to explain the status of this provision and its relationship to the above-described agreed upon provisions for retainages.

In support of its motion, Bethlehem contends that from the face of the pleadings it is undisputed (1) that the contract provided for a total payment of $19,695,000.; (2) that Tishman has paid plaintiff a total of $16,211,188.19 and has withheld payment of $3,483,881.81; and, therefore (3) that Bethlehem ought to have judgment in that latter amount or in that amount less the asserted backcharges. It contends that such a result is justified because it has substantially performed under the contract. The owners have submitted affidavits demonstrating that they have paid Tishman for the structural steel portion of the project.

In response, Tishman asserts that the claim of substantial performance and the very existence and nature of the alleged contract raise factual issues sufficient to preclude summary judgment; that there is evidence that Bethlehem materially breached the contract by providing 800 tons of defective steel;[7] and that such material breach would also preclude summary judgment. It also emphasizes the fact that the counterclaims seek off-setting damages "in excess of $2,600,000." Tishman contends that its claimed backcharges now total in excess of $3,300,000. actual and $940,000. contingent damages and that this new computation of the counterclaim damages makes summary judgment for Bethlehem entirely inappropriate. It also claims that it had the right to allocate payments made to it and that in satisfying the Tishman billing request submitted after the structural steel work was completed the owners knew Bethlehem was not going to be completely remunerated.

In recent months, the Court of Appeals for this Circuit has handed down a number of decisions (the precursors of which are cited and relied on by Tishman) construing Rule 56, Fed.R.Civ.P., strictly and emphasizing the movant's burden to show that no material fact issues genuinely in dispute exist. *Gladstone v. Fireman's Fund Insurance Co.*, 536 F.2d 1403 (2d Cir. 1976); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975). In choosing to delineate only those agreed upon contractual provisions that suggest its right to off-set, Tishman counsel have quite clearly grasped and exploited the usefulness of this recent line of authority for a party opposing summary judgment.

There have been raised on behalf of defendant many semantic questions which may or may not be supportable by the actual facts. The papers concerning these purported questions are prolix, confusing and unclear. The history and management of the prior procedures herein of defendant and the content of its papers on these motions pose a grave question of the genuineness of the points raised and suggest the possibility that many of its tactics are nothing more than dilatory and obfuscating maneuvers to avoid payment due and to shift responsibility to others of defendant's obli-

---

**7.** Tishman has submitted to the Court a series of internal Bethlehem memoranda obtained through discovery that may be construed as admissions that up to 800 tons of the steel to be used in the Theme Towers project would not meet the relevant safety standards. Bethlehem has submitted affidavits from the authors of these memoranda casting an entirely different light on them and leaving the matter in dispute.

gations to plaintiff, without factual warrant.

This Court does not construe the *Heyman* line of authority as a license for the opponent of summary judgment to throw words and papers at the record in an effort to create an aura of dispute and uncertainty and, thereby, dissuade a Court from exercising its Rule 56 powers. It is not believed that it was the intention of the Court of Appeals to permit the Rule 56 remedy to be stultified by tactical semantics, and it remains the function of the Court to cut through the thick underbrush created by excessive paper records and determine whether there are genuinely disputed issues of fact to be resolved.

In the present case, the extent of plaintiff's present failure to carry the burden rightfully placed on it under Rule 56 makes such judicial pruning of surplusage in this case entirely fruitless. As the record stands now, the Court is not only unable to say with assurance just what provisions were and were not agreed to, but it is left in doubt as to whether or not the sum total of the agreed upon provisions will amount to a legally binding agreement. Plaintiff submits what appears to be Tishman's standard form contract together with its lengthy Rider (absent the subsequent correspondence) and apparently intends that these papers be deemed a binding contract despite the internal inconsistencies they contain. Neither document has any signature, yet plaintiff would have the Court declare that the parties have, by their performances, bound themselves to those documents. *See* Uniform Commercial Code § 2–207(3). It makes this argument in the face of the affidavit submitted by a Tishman vice president (the substance of which Bethlehem has agreed is accurate) and the contention therein that the parties never agreed on certain unspecified provisions in these documents.

■ It appears that the nature of Bethlehem's performance (its timing and its substantiality) are currently-contested fact issues that may not be resolved on this motion for, and therefore require this Court to withhold, summary judgment under Bethlehem's contract theory of recovery. *See* 3A *Corbin on Contracts*, §§ 704, 710 at 318–319, 341 (1960 ed.).

However, it may be that plaintiff has a valid and presently enforceable quantum meruit and/or quantum valebat claim lurking in the interstices of this confused record. Throughout the previous and present extensive motion practice in this case, it has been the Court's consistently expressed position that any goods sold and delivered and unpaid for aspect to this action ought not to be frustrated and delayed as a result of its joinder with the more complex and time-consuming issues and disputes orbiting this construction project. There is clear authority in this Circuit for the entry of a partial summary judgment on a goods sold and delivered theory, for example, even in the face of contractual counterclaims involving the same alleged transaction. *Omark Industries, Inc. v. Lubanko Tool Co.*, 266 F.2d 540 (2d Cir. 1959); *Metro Corrugated Container, Inc., v. Owens-Illinois Glass Co.*, 185 F.Supp. 359 (E.D.N.Y.1960). The fact that the counter-claim for off-setting damages here is compulsory does not absolutely preclude the entry of partial summary judgment, nor does the fact that the amount of Tishman's counter-claim might exceed Bethlehem's claim. *See Schroeter v. Ralph Wilson Plastics, Inc.*, 49 F.R.D. 323, 326 (S.D.N.Y.1969).

Still, it is hornbook law in this somewhat disjointed area of contract law that a party in breach of a contract may not seek quasi-contractual remedies, J. Calamari and J. Perillo, *Contracts*, § 320 at 492 (1970); but cf., *Restatement of Contracts* § 357, and that such remedies may not be sought against one who is not in material default of or is willing to perform an existing contract, J. Calamari and J. Perillo, supra, at 492 n. 18; *see Restatement of Contracts*, § 355(4); *Restatement of Contracts (Second)*, § 217(c). In addition, it has been said that such quasi-contractual remedies are not available if there is an express contractual remedy or another remedy which will suffice, *Callano v. Oakwood Park*

*Homes Corp.,* 91 N.J.Super. 105, 219 A.2d 332 (1966); *see Restatement of Contracts,* § 354;[8] and, under *Restatement of Contracts,* § 357,

> [t]he plaintiff has no right to compensation for [even] his part performance . . . if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

■ Consequently, partial judgment on the quasi-contractual claims must be withheld at this stage of the litigation because of the apparent fact issues surrounding the possible breach of the contract by either party, because of Tishman's *defense* of offset, and because of plaintiff's seeming election of its contractual, rather than its quasi-contractual, remedies.

■ It also appears that entry of such judgment would be improper on this record because

> one of the [claimed] issues of fact in dispute between the parties is as to whether [the seller's] claim and [the buyer's] first counterclaim are separable or inseparable, independent or closely related. *Gaetano Marzotto & Figli, S.P.A. v. G. A. Vedovi & Co.,* 28 F.R.D. 320 (S.D.N.Y.1961).

■ There is, therefore, no present basis on which this Court may enter a summary judgment under Rules 56(a) and 54(b) in favor of Bethlehem. However, there being no dispute over the fact that Tishman has withheld $3,483,811.81 of an originally agreed upon contract price of $19,695,000., that fact, pursuant to Rule 56(d), Fed.R. Civ.P., will "be deemed established, and the trial [if any] shall be conducted accordingly."

### III.

In opposition to the motion for a stay of this action pending the determination of the California litigation it commenced, Bethlehem contends that the Courts are "unanimously reluctant" to grant stays in *in personam* cases and cases at law; that Tishman's arguments on this motion merely repeat those made in support of its motion to transfer venue of the action; and that Bethlehem will be prejudiced by such a stay.

■ While it is true that some judges and commentators have suggested that a federal district court is without power to stay its hand during the pendency of a state court action covering the same claims,[9] it cannot be gainsaid that the courts of this Circuit have clearly rejected that position. *Klein v. Walston & Co.,* 432 F.2d 936 (2d Cir. 1970); *Mottolese v. Kaufman,* 176 F.2d 301 (2d Cir. 1949); *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.,* 390 F.Supp. 824 (S.D.N.Y.1975). Though there may be "reluctance" in some quarters, when the factors in favor of a stay are present a Court may and will grant a stay upon appropriate conditions. *See Boggess v. Columbia Rope Co.,* 167 F.Supp. 854 (S.D. N.Y.1958).[10]

---

**8.** *But see* Perillo, *Restitution in a Contractual Context,* 73 Colum.L.Rev. 1208, 1209, where a more extensive application of quasi-contractual remedies in cases involving express contracts is implicitly advocated. However, it would seem entirely consistent with Professor Perillo's approach to permit defendants in such cases to plead and prove valid contractual defenses such as those defenses at issue here.

**9.** *P. Beiersdorf & Co. v. McGohey,* 187 F.2d 14, 15–17 (2d Cir. 1951) (Clark, J., dissenting); *Mottolese v. Kaufman,* 176 F.2d 301, 304–10 (2d Cir. 1949) (Frank, J., dissenting); C. Wright, Federal Courts § 52 at 205 (2d ed. 1970).

**10.** " . . . the judge has extensive discretion in the framing of an order [granting a stay] to achieve the court's goal and to protect the parties from any possible prejudicial effects that might result from a stay." Wright and Miller, *Federal Practice and Procedure, Civil* § 1360, at 639 (1969). *Cf. also Amdur v. Lizars,* 372 F.2d 103 (4th Cir. 1967) (where the termination of a stay was conditioned on the posting of a bond); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 89 F.Supp. 167 (S.D.N.Y.1950).

There is some merit in Bethlehem's observation that Tishman repeats many of the arguments previously made on its motion to transfer venue, but there are also important differences in the respective contexts of those arguments.[11] In its opinion on the previous venue motion, the Court stressed the fact that no particular benefit with regard to the problem of duplication of judicial effort would be gained by such a transfer; i. e., there would be no possibility of joining the state and federal actions after transfer of venue. By granting a stay, this Court would be able to avoid a wasteful duplication of effort but would not be so entirely abandoning control of this case as it would have if venue were changed. In addition, it was not as clear on the previous motion, as it is here, that nearly all parties involved in the disputes over this construction project would be joined in the California state court litigation.

Plaintiff makes no claim that the set of issues presented to the California state court does not entirely subsume the issues presented to this Court, nor does it claim that the state court is in any way unable to resolve those issues. In fact, in surveying the factors relevant to the exercise of the Court's discretion on a motion for a stay at this state of the case,[12] the Court can find but one such factor that may be weighed in

Bethlehem's favor; and that is the last objection to the stay raised by Bethlehem (i. e., the possibility of prejudice). However, that single factor has been given great weight on the past motions in this case. As previously indicated, the Court has taken pains to insure that any simple contract balance or goods sold and delivered claims not be unfairly delayed and disadvantaged by the presentation of more factually complex counterclaims going to the timing and quality of performance under this alleged fifth subcontract or any other subcontract.

Nevertheless, in view of all the factors relevant to a decision to stay an action and with particular regard to the prospect of the needless waste of judicial energies posed by this case, the Court is persuaded that a stay on appropriate conditions is justified.

The evidence indicates *prima facie* that plaintiff has completed the structural steel work on the project and defendant has, based on plaintiff's requisition for that work, obtained from the owners the moneys claimed by the plaintiff to be due it for its deliveries and performance. That the defendant may have commingled these payments with others and that it was entitled to a retainage in respect of the plaintiff's performance does not detract from the fact

11. It is true that Tishman made a belated addition to its previous venue motion, seeking a stay as an alternative to transfer. However, since the filing of the opinion focusing on and denying the transfer, the complexion of this case has changed markedly. The action against the owners has been filed and (in an opinion filed this date) stayed, and it has been made clear, on the argument of this motion, that Bethlehem's state court action has expanded so as to include the whole panoply of parties and issues that have grown out of this construction project.

12. "[W]e believe . . . that the following factors are pertinent to a district court's decision to exercise its discretion in favor of staying proceedings before it: (1) *considerations of comity;* (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and wit-

nesses; and (7) possibility of prejudice to a party as a result of the stay." *Universal Gypsum of Georgia, Inc., v. American Cyanamid Co.,* 390 F.Supp. 824, 827 (S.D.N.Y.1975), *quoting, Nigro v. Blumberg,* 373 F.Supp. 1206, 1212–13 (E.D.Pa.1974). Virtually all of the considerations outlined in Judge Cannella's thorough opinion in *Universal Gypsum* point directly to a stay of a case such as the one before this Court.

While some courts have found the order of the filing of the state and federal actions a significant factor, *Pan American Airways, Inc. v. Consolidated Valtee Aircraft Corp.,* 87 F.Supp. 926 (S.D.N.Y.1949), the fact of the earlier federal filing in this case is of little moment given the fact that Bethlehem itself filed the state court actions and, by all appearances, intends to pursue them. At any rate, this consideration is not raised by Bethlehem and is clearly outweighed by the other factors relevant to the Court's decision.

that it has collected from the owner the amounts requisitioned by the plaintiff.

Given the equitable need to protect potentially valid contract claims and claims for goods sold and delivered from prejudicial delay and in view of the current financial reorganization of Tishman,[13] the Court is persuaded that Bethlehem is owed a substantial degree of security on the granting of the requested stay.

Therefore, in the exercise of the Court's discretion and evaluating the equitable circumstances to be considered, a stay of this case is granted pending determination of the issues between plaintiff and defendant in the California cases, on the condition, however, that the defendant shall execute, deliver and file within thirty days hereof a bond in favor of plaintiff in the amount of $3,500,000. with sufficient sureties to secure any judgment to which plaintiff may become entitled herein against the defendant; otherwise, the motion for a stay is denied. The cross motion for summary judgment is denied without prejudice to renewal upon a more complete record, except to the extent that it shall be deemed that certain facts (described above) have been established for the purposes of trial pursuant to Rule 56, Fed.R.Civ.P.

SO ORDERED.

---

13. An affidavit submitted to the Court by Robert Tishman, the President of Tishman, asserts that Tishman will be able to satisfy any possible judgment against it in this case. However, that affidavit was submitted before the announced reorganization and makes no reference to the effect of that reorganization. A more recently filed affidavit from the same Tishman officer again asserts that Tishman will be able to satisfy a judgment but does not explain the effect of the planned reorganization.