**BRIERWOOD SHOE CORPORATION,**
**Plaintiff,**

v.

**SEARS, ROEBUCK AND CO.,**
**Defendant.**

**No. 79 Civ. 2832.**

United States District Court,
S. D. New York.

Nov. 9, 1979.

**564**

Milton S. Gould, Dean G. Yuzek, Shea & Gould, New York City, for plaintiff.

Gregory P.N. Joseph, George Lander, Fried, Frank, Harris, Shriver & Jacobson, New York City, Burton Y. Weitzenfeld, Richard C. Gering, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion docketed October 23, 1979, and heard November 7, 1979, defendant moves alternatively to (1) transfer this action to the United States District Court for the Northern District of Illinois (Eastern Division) in the interests of justice and for the convenience of witnesses pursuant to 28 U.S.C. § 1404(a); or (2) to stay proceedings in this action pending trial of a pending action in that court under docket No. 79 C 2217 in which the parties are reversed.

Defendant, hereinafter occasionally referred to as "Sears," is a nationwide mercantile chain, incorporated under the laws of New York, and having its office in the City of New York, in accordance with its restated certificate of incorporation, verified May 15, 1978. Its principal office within the "nerve center" definition, is in the Sears Tower, Chicago, Illinois. Plaintiff ("Brierwood") is a Pennsylvania corporation, having its principal office at Kutztown, near Philadelphia. Twenty percent of the stock of Brierwood is owned by Sears, and the balance by Kleinert's, Inc. Its directors meet regularly in New York.

Familiarity with the amended complaint docketed in this action on October 23, 1979 is assumed. The controversy arises out of a long history of contractual relationships between the parties, whereby Brierwood manufactured shoes for sale by Sears to the public. The amended complaint pleads nineteen separate claims in 146 numbered paragraphs, not counting the prayer for relief. A jury trial is demanded. The amended complaint raises federal questions as well as state law claims.

Informal efforts were made to adjust the controversy before suit was filed. Attorneys of two local New York City law firms representing the respective parties conferred at length. Ultimately, on May 23, 1979, when discussions appeared to have reached a stalemate, Brierwood's New York counsel informed Sears' New York counsel by letter that a directors' meeting of Brierwood to be held in New York the following day would vote on a resolution, "pursuant to which counsel would be instructed to commence appropriate legal proceedings against Sears . . . as of June 5, 1979."

Although the same letter offered to continue discussions towards resolving the dispute, sending the letter in effect threw out the starter's flag by which the unseemly but commonplace race to the Courthouse began.

Sears won the race by two days. It filed an action on May 30, 1979 in N.D.Ill. under docket number 79 C 2217 against Brierwood and its fellow shareholder Kleinert's, Inc. It was not until June 1, 1979 that Brierwood commenced this action in this District.

Although Brierwood characterizes the two cases as merely "related," and asserts that the passage of events has mooted some of the claims sued on in N.D.Ill., this Court regards the two lawsuits as presenting controversies which should ordinarily be resolved in a single lawsuit. Any claims presently asserted in either action will probably become compulsory counterclaims when

that plaintiff files its answer in the action in which it is defendant.

Kleinert's is not a party to the New York case, but the principal allegation pleaded against it in N.D.Ill. is found in Count VII of that complaint. There, Sears alleges "upon information and belief," that Kleinert's intentionally and tortiously interfered with Brierwood's contractual relations with Sears and induced Brierwood to breach and repudiate its contracts with Sears. This claim against Kleinert's appears to this Court to be frivolous on its face, since Kleinert's owns 80% of the stock of Brierwood. As such shareholder, it had an existing economic interest in the affairs of Brierwood which it was privileged to attempt to protect when it "interfered," if it did so. No malice is shown or pleaded. The case seems clearly within the rule of *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969) and the cases therein cited, which regard such "interference" as privileged, and not actionable absent a showing of malice. If a valid amended pleading could be filed against Kleinert's, it could be brought in this District or in the New York State courts, as the tort, if there was one, was committed here. See § 302(a)(2) of the New York Civil Practice Act and Rules, applicable here under Rule 4(d)(7) and (e)(1), and 28 U.S.C. § 1391(a). If Kleinert's interfered, it did so in New York through its employees who control Brierwood's board, and the claim arose here.

Following the filing of the two actions, matters proceeded uneventfully. No significant judicial proceedings took place in this District until September 6, 1979 when this Court called a pre-trial conference. At that time counsel for the plaintiff Brierwood appeared and advised that the parties were "on the verge of settlement" of the controversy. New York attorneys appearing for Sears confirmed this representation, and advised this Court that they expected to settle the litigation by October 1st, and that the proposed settlement agreement, which would dispose of the controversy was then in the *ninth draft of revisions.* While it staggers this Court's imagination that a

settlement agreement prepared by competent lawyers can require nine separate and successive drafts, anything is possible in modern commercial litigation. This Court accepted this joint representation, and adjourned the pre-trial conference until October 12th. On October 12, 1979 it appeared that the case had not been settled and that the issue of venue would be raised, as it has been by the within motion.

 The burden of showing the desirability of a transfer is on the moving party. It was conceded, as indeed it must be, that venue in this District is proper, as Sears is incorporated here. See 28 U.S.C. § 1391(c). Accordingly, to move this case to N.D.Ill., it must appear that the interests of justice and the convenience of parties and witnesses demand a change. Since the plaintiff's choice of forum is entitled to great weight, the movant's task is a difficult one. The Court has great discretion to consider whatever factors it chooses in deciding such motions, but the test usually followed in this Circuit is that formulated by Judge Weinfeld of this Court in *Schneider v. Sears*, 265 F.Supp. 257, 261–67 (S.D.N.Y.1967). The considerations set forth in that opinion include: (a) convenience to parties; (b) convenience to witnesses; (c) relative ease of access to sources of proof; (d) availability of process to compel attendance of unwilling witnesses (residing outside the 100-mile radius from the courthouse); (e) cost of obtaining willing witnesses; (f) where the case can be tried more expeditiously and inexpensively; and (g) the interests of justice. See generally, Brieant and Scheindlin, *Venue in the Second Circuit*, 43 Brooklyn Law Review 841, 852 (1977) and cases therein cited.

 This District was chosen by plaintiff as the place for litigation. Plaintiff could have sued in N.D.Ill., E.D.Pa. or in this District. Although its principal activities center in Chicago, Sears has been sued in the state of its incorporation. Neither case is at issue, so that the controverted facts are not yet known to the Court. Brierwood represents that it has its records in Pennsyl-

vania and in New York, and that it will have three witnesses, one of whom is in Chicago, and two in Philadelphia. Sears asserts that it has 13 witnesses in Illinois and 30 additional present or former employee witnesses who "may" have knowledge of the dispute. Of these, 29 reside in Illinois. This Court regards it as highly unlikely that the trial of this case will require 43 witnesses to testify on behalf of the defendant, and believes that much of such proposed testimony may well turn out to be unnecessary, cumulative or directed to facts not seriously disputed.

Both parties have attempted to enlarge the inquiry as to the proper place of trial in the interests of justice and for the convenience of the witnesses and parties, so as to require a consideration of the merits. This is unnecessary. Plaintiff asserts, among its nineteen claims, violation by Sears of the Robinson-Patman Act (15 U.S.C. § 13) as well as state law (diversity) claims for goods sold and delivered, breach of contract, wrongful cancellation of production orders, and more, including a claim for *prima facie* tort, and one for defamation.

Brierwood's choice of this forum was not captious nor does the selection of this District appear to have been intended to harass defendant in any way. Ordinarily a corporation is properly sued in its state of incorporation and expects to be held accountable for its actions in that state. Brierwood's directors, a group which includes two Sears employees, have met frequently and regularly in New York. Brierwood and Kleinert's share an office in Manhattan at 350 Fifth Avenue. Conferences between representatives of Sears and Brierwood management, concerning the relationship which is under suit, have taken place in New York on a number of occasions over a long period of time. See ¶ 23 of Affidavit of Milton S. Gould, sworn to November 1, 1979.

■ The Supreme Court has stated [*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)] that unless the interests of justice and the balance of convenience are "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." This policy has even greater force where the plaintiff's choice of forum is the state in which the defendant resides, or if a corporation, is incorporated. Sears is actively present in New York, and has been present in New York in the past in connection with the relationships between these parties. Its executives have access to its own private aircraft fleet. Sears' expense or inconvenience in transporting its employees to the state of its incorporation are regarded by the Court as minimal and insignificant. Travel between Chicago and New York City can be accomplished within three hours. It takes longer than that for the litigants residing at the outskirts of our District to find their way into lower Manhattan by surface transit. To the extent that travel time places any inconvenience on any party, change of venue is not appropriate where the result would be merely to shift the expense and inconvenience from one party to the other. See *Computer Operations, Inc. v. Digital Equipment Corp.*, 387 F.Supp. 8, 11 (E.D.N.Y.1975).

■ The Court finds incredible the suggestion that 43 witnesses would testify on behalf of Sears. Some of these will be deposed prior to trial. Those whose testimony would be cumulative will not be needed. The Court is inclined to believe that the case will depend in most part on documents generated during the course of the relationship between the parties. In any event, the comments of Judge MacMahon of this Court in *Schmidt v. American Flyers Airline Corp.*, 260 F.Supp. 813, 814 (S.D.N.Y.1966) would appear to be applicable here:

"The moving affidavit does not contain a statement showing what the testimony of any of these witnesses is expected to be, or how it is material or necessary to the issues. All [or most] of these witnesses are under defendant's control and can testify in New York, if defendant desires. We are not convinced that defendant would suffer any oppressive or unusual expense or inconvenience in transporting its own employees to New York, where it does business." [Matter in brackets added.]

A factor which reflects the interests of justice concerns the issue of where the case can be tried most expeditiously and inexpensively. This Court's docket is presently up-to-date, and if the pleadings were closed, and any necessary pre-trial discovery had been concluded, it could try this case forthwith. The Court recognizes that some pre-trial preparation and discovery probably will have to be done before the parties could answer ready for trial in either district. What the state of our docket will be in one or two months from now when the parties will have completed any necessary proceedings, is of course uncertain, since criminal trials and cases involving emergencies, preliminary injunctions or other matters of great moment are entitled to priority in trial scheduling. Informal inquiry by the Court indicates that calendar conditions in N.D.Ill. are substantially the same, and that if marked ready tomorrow, this case could be reached for trial in the near future. Any difference is so slight as to be meaningless, since the case, unfortunately is not ready for trial tomorrow. Since it was filed on June 1st, perhaps it could have been made ready for trial, but for the diversion and cessation of pre-trial preparation caused by the perceived necessity to devote the time and effort of the lawyers to drafting nine separate editions of a proposed settlement agreement. Be that as it may, the case can probably be tried at least as expeditiously here as it can at the proposed place of transfer, and perhaps sooner.

Brierwood argues that its costs of litigation will be "doubled" were the case transferred, as it will have to brief and prepare new counsel, at a substantial cost in time charges, or alternatively, absorb travel time charges and housing expense for its present lawyers to try this case in the transferee district. While the Court regards this estimate of doubling as slightly exaggerated, it seems undeniable that there will be some substantial duplication of expense and effort if the case is transferred now. Plaintiff will either pay excessive legal expense for travel of its New York attorneys, or retain new attorneys in Illinois who will not possess whatever familiarity with this long

standing and complex relationship between the parties present counsel in New York developed while soldiering through the nine proposed settlement agreement drafts. This factor alone suggests that the case can be tried more expeditiously and inexpensively in this District.

Brierwood also argues that it is a much smaller concern with less economic strength than Sears possesses, and for that reason its convenience is entitled to greater consideration than that of Sears. This factor has been considered by some courts as bearing on the balance of convenience. See, *e. g.,* *Schmidt v. American Flyers Airline Corp.,* *supra,* and *Goldstein v. Rusco Industries,* *Inc.,* 351 F.Supp. 1314, 1318 (E.D.N.Y.1972). To the extent that relative financial strength of the parties is a valid criterion, a point on which no opinion is expressed, the effect is to aid Brierwood's position on the motion. We would prefer to consider that all parties, regardless of their size are equals at the bar of this and any federal court.

The totality of the circumstances of this case, and consideration in this Court's discretion, of the applicable criteria of *Schneider v. Sears, supra,* requires denial at this time of the motion for change of venue. As the record presently stands, Sears has failed to make a convincing showing, or any showing, that the balance of convenience and the interests of justice are sufficiently in its favor to require a transfer.

We turn now to the companion motion for a stay. This Court firmly believes that this litigation ought to be tried in New York and doubts that the District Court in Illinois is likely to reach a different conclusion, although, of course it is free to do so. There appears to be no present purpose in staying this case pending the resolution of the Illinois case. The Court has been advised that Brierwood intends to move in that action for an order transferring the case to this District for consolidation or joint trial with this case. Should such motion be denied, the motion for a stay of trial here may be presented again after the pleadings are closed in both actions, and it

is known exactly what factual and legal issues will be litigated in each lawsuit. The two day difference in filing date is regarded as trivial. Since that time neither action seems to have progressed further than the other, except that an amended complaint has been filed in New York, and Brierwood's counsel asserts that some, but not all of the claims in the N.D.Ill. case have been mooted by the passage of time. Service of process, a point of slight relevancy, was completed first in the New York action.

■ The purpose of granting a stay while a companion case is litigated has to do with efficient judicial administration and the prevention of manipulative practices. It is addressed to the discretion of the Court, and no basis appears to justify preventing this plaintiff from pursuing defendant in the state of its incorporation simply because the defendant won the race to the courthouse by filing two days earlier in another forum. The practice of determining priorities between pending actions on the basis of dates of filing is a general rule, not to be applied in a mechanical way, regardless of other considerations. *Hammett v. Warner Bros. Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir. 1949). The first filed action should not have priority when little if anything has been done to advance it for trial, and the balance of convenience favors the forum in which the latter suit is commenced. See *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970); *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872 (2d Cir. 1951); *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215 (2d Cir. 1978).

■ Before leaving the question of the race, it must be observed that professional courtesy generally warrants a last attempt in commercial disputes to resolve the client's problems short of litigation. It was proper for Brierwood to notify Sears in advance, as it did, of its intentions to litigate. Absent emergency, it would have been inappropriate for management of Brierwood to have filed a suit against its shareholder and principal customer without express permission of Brierwood's board of directors. The minority directors, employed by Sears, were entitled to be informed, in advance, as they were, that such authorization would be sought. To have prepared the complaint in advance of authorization, so that it could have been filed on May 25th, the date following the meeting, would have been an unfair waste of Brierwood's funds for legal expense, if the case were settled at the directors' meeting, or if further delay were to be authorized. Here plaintiff behaved with propriety and observed the amenities, thereby losing the race to the courthouse by two days. Were we to give undue weight, or any weight, to the results of that race under these circumstances, we would be encouraging other litigants in future like cases to file first, seek board ratification rather than authorization, and then inform their adversaries. Such a policy would reward Pearl Harbor tactics at the expense of the Marquis of Queensberry rules.

The motion for a stay is denied, with leave to renew.

Counsel for the parties are directed to proceed with any required pre-trial procedures in this case, and shall attend a pre-trial conference before me on January 11, 1980 at 9:30 A.M. in Courtroom 601. Pretrial proceedings shall be supervised by Hon. Joel J. Tyler, United States Magistrate, who shall also address himself to the possibility of creating a tenth draft of the proposed settlement which may find favor with both parties. His efforts in this regard shall remain confidential and shall not be communicated to this Court.

So Ordered.