**COMPANION LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Michelle M. MATTHEWS, as trustee u/a/d 4/30/81, Executive Health Examiners, P. A., Defendants.**

**No. 82 Civ. 2819 (WCC).**

United States District Court,
S. D. New York.

Sept. 29, 1982.

Miller, Montgomery, Sogi & Brady, P. C., New York City, for plaintiff; Jeffrey S. Cook, Alan M. Epstein, New York City, of counsel.

Pitney, Hardin, Kipp & Szuch, Morristown, N. J., Gilmartin, Poster & Shafto, New York City, for defendant Michelle M. Matthews; Gerald C. Neary, Gail H. Allyn, Morristown, N. J., of counsel.

## OPINION AND ORDER

CONNER, District Judge.

This action is before the Court on the cross-motions of plaintiff Companion Life Insurance Company ("Companion") and defendant Michelle M. Matthews ("Matthews"). Companion has moved for an order pursuant to Rule 65, F.R.Civ.P., enjoining defendants from proceeding in any other action with regard to Companion's insurance policy number 2561023. Matthews in her cross-motion asks this Court to stay further proceedings in the instant action pending resolution of a case in the Superior Court of New Jersey, Chancery Division, Morris County, Docket Number c–3754–81, entitled *Michelle M. Matthews, Trustee u/t/a/d April 30, 1981 v. Companion Life Insurance Company and Executive Health Examiners, P. A.* (the "New Jersey Action").

## I.

In May 1981, Companion, a New York corporation, issued a $700,000 term life insurance policy numbered 2561023 (the "Policy") on the life of Edward Matthews, Jr. (the "Decedent"), a New Jersey resident. Matthews, Decedent's wife, was named as owner and beneficiary of the Policy, in her capacity as trustee of a trust created on April 30, 1981 to receive the proceeds of any insurance on Decedent's life. The Policy replaced an earlier policy issued by Companion in February 1981 in the amount of $600,000 (the "First Policy"). On December 29, 1981, less than eight months after the issuance of the Policy, Decedent suffered a cardiac arrest while playing handball and died. Matthews on January 20, 1982 provided Companion with proof of her husband's death, but Companion, by letter dated May 3, 1982, denied defendant's claim and returned the premiums already paid on the Policy. Matthews refused that tender.

In connection with his application for the First Policy, Decedent underwent, at the request of Companion, a medical examination conducted by Executive Health Examiners, P. A. ("Executive Health"), a New Jersey professional association. Decedent had been examined by doctors at Executive Health on several prior occasions unrelated to these applications for insurance. Companion alleges that after examinations in 1979 and 1980, Decedent was advised by doctors at Executive Health that he had an irregular heartbeat and possible heart disease. As justification for its denial of Matthews' claim, Companion asserts that neither Matthews nor the Decedent had disclosed this information when requested to do so in the applications for both the First Policy and the Policy. Companion further alleges that defendant Executive Health did not furnish this information in the medical examiner's section of the application that it completed and filed with Companion.

On May 3, 1982, the same day that it informed defendant Matthews of the denial of her claim, Companion filed this action for a declaratory judgment under 28 U.S.C. §§ 2201–02, seeking rescission of the Policy and an injunction preventing Matthews from filing any further actions on the Policy. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. On June 4, 1982, one month after the institution of this federal action, Matthews commenced the

New Jersey Action for recovery on the Policy. All the parties who appear before the Court in this suit are also before the state court in the New Jersey Action. Thus there are two contemporaneously pending lawsuits, each capable of fully resolving the existing rights among these three parties.

## II.

At the outset, it appears that these cross-motions offer this Court three options: to enjoin the New Jersey Action and continue litigation of the dispute here, to stay this action and allow the New Jersey Action to proceed, or to allow both suits to go forward. In light of the Anti-Injunction Act, 28 U.S.C. § 2283, however, this Court finds itself limited to a choice between the latter two of these three alternatives.

■■■ The Anti-Injunction Act provides that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Although this statute does not prevent a federal court from restraining a party from instituting state proceedings in the future, it does establish an absolute prohibition once the state proceedings have been commenced. See *e.g., Mitchum v. Foster,* 407 U.S. 225, 229, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (1972); C. Wright, A. Miller & E. Cooper, 17 Federal Practice and Procedure § 4222 at 318 ("Wright, Miller & Cooper"). Further, it is well settled that this prohibition cannot be evaded by framing the order, as Companion requests, so that it restrains only the parties and not the state court. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

■■■ Companion argues that because the New Jersey Action was instituted after the commencement of this action, the Anti-Injunction Act does not apply. In support of this proposition, Companion relies on Judge—now Supreme Court Justice—Ste-

vens' opinion in *Barancik v. Investors Funding Corporation of New York,* 489 F.2d 933 (7th Cir. 1973). In *Barancik,* the plaintiffs filed suit in federal court requesting damages and a declaratory judgment regarding certain real estate in Chicago. Approximately three months later, the plaintiffs moved for an injunction restraining defendant from commencing any separate legal action concerning the real property in dispute. While that motion was pending before the court, defendant filed a forcible entry and detainer action in Chicago Municipal Court. The Seventh Circuit, by Judge Stevens, affirmed the injunction of the state court proceedings, holding that "the mandatory prohibition in § 2283 against injunctions staying court proceedings does not apply to state actions commenced after a motion for injunctive relief is filed in the federal court." 489 F.2d at 938. The court was motivated by a fear that under a different rule, a party could undercut a district court's authority by commencing a state court action while the federal court was considering the motion for an injunction. See *id.* at 937. Thus, under the Seventh Circuit's rationale, the time the court's injunctive powers are invoked, rather than the time the injunction is actually issued, determines the applicability of the Anti-Injunction Act. This result was strongly criticized in a later Sixth Circuit case, *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir. 1978), which declined to follow *Barancik.* Instead, the *Roth* court applied what it considered to be the settled and firm rule that once state proceedings have commenced, the Anti-Injunction Act immediately applies and bars a later federal injunction. *Id.* at 533.

The posture of this case is such that this Court need not choose between these competing rules; under either test, the Anti-Injunction Act applies. Neither party contends that the New Jersey Action has not begun; therefore, under the *Roth* standard the Anti-Injunction Act certainly applies. Alternatively, even if this Court compares the time of filing of the state action with the time the motion for an injunction was

filed, as done in *Barancik,* the Act would still apply in this case. In contrast to the motion in *Barancik,* Companion's motion for a Rule 65 order was not made until well after it had notice that Matthews had commenced the New Jersey Action. Therefore, at the time Companion's motion was made, state proceedings were pending. In urging this Court to follow *Barancik,* Companion argues, albeit somewhat ambiguously, that the Court should treat the request for an injunction as having been made at the time the federal action was commenced because, as part of its original declaratory judgment complaint, Companion prayed for injunctive relief against Matthews. This I decline to do. If this Court were to extend *Barancik* to this degree, it would cut to the very core the coverage of the Anti-Injunction Act, whereas *Barancik* itself merely trimmed the edges. Further, it would be doing so in the face of successive Supreme Court pronouncements that the Act is to be read quite literally. See, *e.g., Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 630–31, 97 S.Ct. 2881, 2887–2888, 53 L.Ed.2d 1009, *Atlantic Coast, supra,* 398 U.S. at 286–87, 90 S.Ct. at 1742–1743. The Court rules, therefore, that the Anti-Injunction Act applies to Companion's motion.

■ Since the Act applies, Companion's motion must be denied unless the requested injunction will fit within one of the Act's three exceptions. *Vendo, supra,* 433 U.S. at 630, 97 S.Ct. at 2887. Only one of the three exceptions, "necessary in aid of its jurisdiction," is arguably applicable.[1] It is quite clear, however, that even if the federal court acquires jurisdiction over an action before the state court does, this exception is inapplicable when the actions are *in personam.* As the Supreme Court said in *Vendo, supra,* "[w]e have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court." 433 U.S. at 642, 97 S.Ct. at 2893; see *Kline v. Burke Construction Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); 17 Wright,

Miller & Cooper, *supra,* § 4225 at 335. Therefore, since the Court has concluded that the Anti-Injunction Act applies and no exception to the Act is present, Companion's motion for an injunction restraining the New Jersey Action is denied.

### III.

■ Turning to Matthew's cross-motion for a stay of this action pending the outcome of the New Jersey Action, this Court immediately confronts the general rule that "as between state and federal courts, ... 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'" *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910). This approach stems from what the Supreme Court terms "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* At the same time, this Court is fully cognizant of the duplication of time, money, and judicial resources that will result if defendant's motion is denied and both actions are allowed to proceed contemporaneously. Because of such concerns, a doctrine has developed whereby a federal court may dismiss or stay its action due to the presence of a concurrent state proceeding. Although this procedure is conceptually related to the abstention doctrines, and has in fact been labelled a fourth abstention doctrine by some commentators, see 17 Wright, Miller & Cooper, *supra,* § 4247 at 502, it rests on considerations of sound judicial administration rather than on constitutional implications or principles of federalism and comity. Consequently, situations in which a federal court should defer to duplicative state civil proceeds are much more limited. See *Colorado River, supra,* 424 U.S. at 817–18, 96 S.Ct. at 1246–1247.

---

1. No one contends that the other two exceptions, "expressly authorized by Act of Congress" and "necessary ... to protect or effectuate its judgments," are relevant to this case.

*Colorado River* was an appeal from an outright dismissal [2] of an action by the district court in favor of pending state proceedings. The Supreme Court, after extensive discussion of the limited opportunities available for such action, ultimately held that the district court's dismissal was proper. *Id.* at 820–21, 96 S.Ct. at 1247–1248. In *Will v. Calvert Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), Justice Rehnquist writing for a plurality of the Court, stated that it was clearly within a federal court's discretion to stay proceedings in an action before it pending determination of a parallel state action.

There are sound reasons for our reiteration of the rule that a district court's decision to defer proceedings because of concurrent state litigation is generally committed to the discretion of that court. No one can seriously contend that a busy federal trial judge, confronted both with competing demands on his time for matters properly within his jurisdiction and with inevitable scheduling difficulties because of the unavailability of lawyers, parties, and witnesses, is not entrusted with a wide latitude in setting his own calendar. Had Judge Will simply decided on his own initiative to defer setting this case for trial until the state proceedings were completed, his action would have been the "equivalent" of granting the motion of American Mutual to defer, yet such action would at best have afforded Calvert a highly dubious claim for mandamus. We think the fact that the judge accomplished this same result by ruling favorably on a party's motion to defer does not change the underlying legal question.

437 U.S. at 665, 98 S.Ct. at 2558. When *Will* and *Colorado River,* the two most recent Supreme Court pronouncements on the subject, are read together, they confirm a district court's discretion to stay its proceedings in favor of a concurrent state action, with the caveat that this power should be exercised sparingly.

In *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Court ruled that a district court had the discretion to dismiss a declaratory judgment action if the substantive controversies between the parties could be more efficiently resolved in a pending state court action. 316 U.S. at 494–95, 62 S.Ct. at 1175–1176. Although in *Brillhart,* the state action was already pending at the time plaintiff commenced his federal declaratory judgment action, the plaintiff was not made a party to that state action until after he had filed his federal suit. See *id.* at 492–93, 62 S.Ct. at 1174–1175. The *Brillhart* result persuades this Court that the authority to stay the instant action is clearly a matter within the Court's discretion. Companion argues that because it filed the federal action first, this Court may not defer to the New Jersey court. This argument misconceives the general rule that time of filing determines the priority of actions. See *Brierwood Shoe Corp. v. Sears, Roebuck and Co.,* 479 F.Supp. 563, 568 (S.D.N.Y.1979). However, "this rule is not to be applied in a mechanical way regardless of other considerations." *Hammett v. Warner Brothers Pictures, Inc.,* 176 F.2d 145, 150 (2d Cir. 1949); see *Brierwood, supra,* 479 F.Supp. at 568. Indeed, district courts have not infrequently stayed their proceedings pending the outcome of a subsequently filed state action. See *Bethlehem Steel Corp. v. Tishman Realty & Construction Co., Inc.,* 72 F.R.D. 33 (S.D.N.Y.1976); *Centronics Data Computer Corp. v. Merkle-Korff Industries,* 503 F.Supp. 168 (D.N.H. 1980); *Chintala v. Diamond Reo Trucks, Inc.,* 393 F.Supp. 1392 (E.D.Pa.1975).

Priority of filing is thus only one factor to be considered in the Court's exercise of its discretion, and in this case deserves minor weight. Companion filed its federal declaratory judgment action on May 3, 1982, the same day that it notified Mat-

---

**2.** Whether there is, or should be, a distinction between a stay or proceedings and a dismissal of an action is not totally clear. In *Will v. Calvert Insurance Co.,* 437 U.S. 655, 98 S.Ct.

2552, 57 L.Ed.2d 504 (1978), Justice Rehnquist, writing for a plurality of the Court, felt that the two acts should not be treated synonymously on review.

thews her claim had been denied. Thus, by the time Matthews had knowledge of any dispute with Companion, she had already become a defendant in this federal action. Indeed, at the time Companion brought this declaratory judgment action, it had no knowledge that Matthews would contest its rejection of the claim. In another context, Justice Brennan spoke against permitting "the federal declaratory judgment [to become] a prize to the winner of a race to the courthouses . . . ." *Perez v. Ledesma,* 401 U.S. 82, 119 n.12, 91 S.Ct. 674, 694 n.12, 27 L.Ed.2d 701 (Brennan, J., concurring and dissenting in part); see *Factors etc., Inc. v. Pro Arts Inc.,* 579 F.2d 215, 219 (2d Cir. 1978). By holding, in this context, that the timing of the actions is determinative, this Court would be countenancing Companion's actions and rewarding it for winning a race to the courthouse which it had completed before its adversary heard the starting gun. I refuse to do so.

In *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.,* 390 F.Supp. 824 (S.D.N.Y.1975), this Court cited seven factors as appropriate to the determination of an application for staying a situation such as this:

> [T]he following factors are pertinent to a district court's decision to exercise its discretion in favor of staying proceedings before it: (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay.

390 F.Supp. at 827, quoting *Nigro v. Blumberg,* 373 F.Supp. 1206, 1212–13 (E.D.Pa. 1974). A weighing of these factors in the present case argues persuasively for a stay in favor of the New Jersey Action. The same parties have appeared in both of these actions, and no one contends that the relief available in the New Jersey Action or the speed with which it can be dispensed is any less adequate than could be achieved in this Court. Further, the possibility that Companion will be subject to nonresident prejudice in New Jersey is far too speculative and insubstantial to affect this balance of factors: One cannot seriously argue that Companion faces more negative sentiment in New Jersey because it is a New York corporation than it would if it were a New Jersey corporation. Rather, the prejudice against Companion, if any, stems from its status as a large insurance company refusing to pay a grieving and needy widow. This form of prejudice could as easily infect a jury in Manhattan as it could a jury in Morristown, New Jersey, less than forty miles westward. Indeed, the ethnic and economic differences between jurors in Manhattan and those in its affluent exurbs suggests that Companion will confront less prejudice in Morristown than it would here.

The two factors that persuade this Court that a stay of this action is proper are considerations of judicial efficiency and the convenience of parties, counsel, and witnesses. Although convenience in this instance is not as significant a factor as it would be if these two actions were proceeding on opposite coasts, it nevertheless favors the New Jersey forum. Decedent was domiciled in New Jersey and died there. He underwent the challenged physical examinations in New Jersey at the hands of a New Jersey professional association. Two of the three parties are New Jersey residents represented by New Jersey attorneys. Although it would not be seriously burdensome for them to litigate this dispute in New York, it is certain to be far more convenient in New Jersey. On the other side, Companion is a New York corporation with New York attorneys. Although Companion processed the Policy in New York and Decedent may have signed it in New York, these administrative tasks are not central to the matters in dispute at trial or the witnesses who will have to be examined. Further, although there is no doubt that Companion would prefer to litigate this controversy only in New York, that is no longer a viable option. This Court has only two options: to stay this action in favor of

the New Jersey Action or to allow both actions to proceed.[3] The waste of judicial resources resulting from concurrent proceedings in the two forums is both substantial and needless, and clearly should be avoided if at all possible. These considerations, along with the balance of conveniences favoring New Jersey witnesses and parties, persuades the Court to exercise its discretion to stay this suit pending resolution of the New Jersey Action.

In choosing to issue the stay, the Court is not unmindful of the contrary considerations, including those relied upon for an opposite result in *Bryant Electric Co. v. Joe Rainero Tile Co., Inc.*, 84 F.R.D. 120 (W.D. Va.1979):

> Because the federal suit was ruled to have been instituted prior to the state court suit, this court will not stay its proceedings on the grounds that they are duplicative. It would be illogical to allow a defendant in a federal court action based on diversity jurisdiction to move to stay it because of a subsequently filed state court action. To do so would destroy the concept of diversity jurisdiction. The nonresident plaintiff has availed itself of a neutral forum and should not be deprived of it, especially since it may be at a disadvantage in state court.

84 F.R.D. at 126. But after thorough consideration of all the relevant factors, this Court concludes that this duplicative action should not proceed concurrently with the New Jersey Action. Accordingly, further proceedings in this action are stayed, and this case will be placed on the Suspense docket of this Court, pending resolution of the New Jersey Action.

SO ORDERED.

---

**3.** Although there exists the possibility that Companion might file a motion in the New Jersey Action seeking a stay of proceedings there pending·determination of this action, no such motion has yet been filed.