**SAFECO INSURANCE COMPANY
OF AMERICA**

v.

**Ronald H. MILLER.**

**Civ. No. Y–83–3432.**

United States District Court,
D. Maryland.

Aug. 1, 1984.

Albert D. Brault, Rockville, Md., and Jerome V. Bales, Overland Park, Kan., for plaintiff.

C. Bruce Works, Topeka, Kan., and William C. Staley, Rockville, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff, an insurance company incorporated and headquartered in the state

of Washington, has filed this declaratory judgment action against Ronald H. Miller, a resident of Kansas at the time of filing, asking this Court to rule on the limits of a disputed portion of the defendant's insurance coverage. Before the Court are the defendant's motion to dismiss or to transfer and the plaintiff's motion for summary judgment.

FACTUAL BACKGROUND

Certain facts are undisputed. In 1969, the defendant, then a resident of Maryland, applied for and received an automobile insurance policy issued by the plaintiff through a Maryland insurance agent, the Kirkman Insurance Company of Gaithersburg. The defendant renewed the policy semi-annually by paying the premiums required by the plaintiff.

In March, 1982, the defendant was temporarily reassigned by his employer to Topeka, Kansas. The defendant moved to Topeka, but his family remained in Gaithersburg. Sometime in the spring of 1982, the plaintiff mailed the premium notice for the period from April 27, 1982, through October 27, 1982, to the defendant's address in Gaithersburg, and the premium was paid.

In June, 1982, the defendant moved his family to Topeka, presumably because his temporary assignment became permanent. On June 1, 1982, the defendant called his insurance agent, A. Gwinn Kirkman, and informed him that he would be moving to Kansas. The defendant maintains that, during the telephone conversation, Kirkman informed him that "he didn't think there was any significant difference in the laws [between Kansas and Maryland] to require Miller to transfer his policy immediately" (Defendant's Opposition to Plaintiff's Motion for Summary Judgment, "Statement of Disputed Facts," Doc. No. 16, at ¶ 1). The defendant, however, maintains that "Mr. Kirkman urged Mr. Miller to get in touch with a Kansas agent in order to determine whether or not he needed to change his insurance" (Plaintiff's Memorandum in Support of Motion for Summary Judgment, Doc. No. 15, at p. 2).

In July, the defendant informed Kirkman of his new address in Kansas, and the plaintiff issued a "change of address" form to the defendant which reflected this new address, effective July 29, 1982.

On August 31, 1982, the plaintiff sent the defendant a notice informing him that his insurance policy would be canceled effective October 27, 1982, because of his move from Maryland to Kansas. The defendant applied for and was issued a new Safeco auto insurance policy by a Kansas agent, to become effective after the expiration of the one issued by the Maryland insurance agent. However, two days before the expiration of the Maryland policy, the defendant was seriously injured while riding in a car driven by a fellow employee just south of Topeka (it appears from the police report that the driver fell asleep at the wheel). The defendant claims damages amounting to more than $850,000 from the accident. The driver of the car was insured to a maximum of $50,000 for personal injury liability.

The plaintiff argues that it is not liable to the defendant, since the driver's maximum for personal liability exceeded the $20,000 maximum per person recovery under the "underinsured and uninsured" provisions of the policy issued in Maryland. The defendant maintains that Kansas law requires that insurance agents offer those purchasing automobile insurance the opportunity to reject coverage for un- and underinsured motorists equivalent to the amount of personal injury liability coverage included in the policy. Because the original Maryland policy issued by the plaintiff contains $300,000 worth of personal injury liability coverage, the defendant contends, Safeco should have offered the defendant the opportunity to accept or reject coverage for underinsured motorists in that amount, and since it did not, the policy is presumed, under Kansas law, to include that coverage for $300,000.

For reasons that will become apparent, the chronology of the litigation generated by this dispute is also relevant. This declaratory judgment action was filed in this

Court September 29, 1983. The plaintiff's attempt to serve the defendant by mail failed, for reasons which are not apparent. At some point before the plaintiff here was able to effect service, the defendant filed an action in Kansas state court against the driver of the vehicle and against Safeco (although the date that action was filed is unclear, documents attached to the defendant's motion to dismiss, Doc. No. 6, Exhibit B, indicate that process in the Kansas case was served on October 31, 1983). Service in the action before this Court was perfected November 9, 1983.

PRELIMINARY MATTERS

■ One of the grounds stated in the defendant's motion to dismiss now before this Court is that the plaintiff, Safeco Insurance Companies, is an improper party to this action, since the policy was issued by the Safeco Insurance Company of America, a separate corporate entity. The plaintiff has moved to amend its complaint by interlineation to substitute the appropriate corporate party. The defendant has opposed this motion, claiming that he would be prejudiced, but gives no particulars.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be "freely given when justice so requires." In this instance, the plaintiff seeks to substitute a company that is a member of the plaintiff named in the complaint, a corporation consisting of a group of insurance companies. No prejudice has been shown or is readily apparent, and the motion to amend will be granted. The name of the plaintiff shall be amended to "Safeco Insurance Company of America," and this amendment shall relate back to the filing of this action.

JURISDICTION

Several of the defendant's arguments for dismissing this case may be summarily dispensed with. The defendant argues that the case should be dismissed or that return of service should be quashed because the defendant was improperly served. As the plaintiff points out, the defendant does not explain why process was not properly served, and a review of the file indicates that process was, in fact, properly served. The defendant also claims that this Court lacks subject-matter jurisdiction. However, diversity of the parties has been established and more than $10,000 is at issue, so subject-matter jurisdiction lies in this Court. The defendant also claims that the complaint must be dismissed because his insurance policy was with the Safeco Insurance Company of America, not the named plaintiff (Safeco Insurance Companies). This problem has been resolved by the amendment mentioned above.

■ The first claim that need be addressed in detail is the defendant's claims that the Court lacks personal jurisdiction over him, because he is a resident of Kansas lacking the requisite personal contacts with this District. The plaintiff contends that this Court has personal jurisdiction under the Maryland "long-arm" statute, Md.Cts. and Jud.Proc. Code Ann., § 6–103 (1984), which provides (in relevant part):

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) In general.—A Court may exercise personal jurisdiction over a person who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State ...

The question of personal jurisdiction over the defendant is to be decided under the law of the forum state. *Midland Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 901 (2d Cir.1981).

■ As noted by the Maryland Court of Appeals in *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1975), analyzing personal jurisdiction under a long-arm statute is a two-step process, where the Court must first determine whether "the statute purports to authorize the assertion of personal jurisdiction," and secondly decide "whether an exercise of jurisdiction permitted by the statute violates the Due Process Clause of the Fourteenth Amendment."

These inquiries merge under the Maryland long-arm statute, however, since,

> [a]s noted repeatedly in the cases, the long arm statute represents an effort by the Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal Constitution. *Id.*

In this case, the defendant has two significant links with Maryland. First, he was a domiciliary of this state at the time the contract (the insurance policy effective April 27 through October 27, 1982) was made. And secondly, the contract was made and was expected to be performed in this state. The first link would appear to satisfy the requirements necessary for a state to exercise "general" jurisdiction over the defendant, that is, jurisdiction in cases whose subject matter is not related to the defendant's contacts with the forum state. *See Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952). As stated in *Geelhoed v. Jensen, supra,*

> One who resides in a state necessarily avails himself of the benefits and protections of its laws. The taking up of residence is, in fact, the quintessential act by which one avails himself of the privilege of conducting activities in the state. 277 Md. at 231, 352 A.2d 818.

But even if this first connection between Maryland and the defendant was insufficient, for "specific jurisdiction" to lie (*See* J. Martin, *Conflict of Laws* (1978) at 522), there need be only "minimum contacts" between the defendant and the forum with regard to the cause of action for which jurisdiction is sought. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Here, as mentioned above, the contract was formed in Maryland, and was expected to be performed in Maryland. Even if, as the defendant appears to be claiming, a new contract was formed when he notified the plaintiff of his change of address, the defendant initiated that change by contacting the plaintiff's agent in Maryland.

One commentator, 4 Wright & Miller, *Federal Practice & Procedure,* § 1069, at 263–264 (1969), has suggested:

> ... it seems that a federal court may invoke a state long-arm statute to assert jurisdiction over a non-resident individual who has committed a single tortious act within the state as readily as it can in the case of a corporation.

> In a number of situations, jurisdiction can also be obtained over an individual who has committed a nontortious act in the state provided that his contacts with the state are such as to make the federal court's assertion of jurisdiction reasonable.

It would appear to be eminently reasonable for the Court to assert jurisdiction under the circumstances discussed above. The Court's decision in this regard is bolstered by the recent decision issued by the Fourth Circuit in *August v. HBA Life Ins.,* 734 F.2d 168 (4th Cir.1984). There, the Court of Appeals held that the Commonwealth of Virginia could assert long-arm jurisdiction over an insurance company whose only contact with that state was to send a solicitation for a change of an insurance policy to a former Arizona resident who had moved to Virginia. The Court emphasized the importance of the locus of the place of "negotiation or formation of the insurance contract sued upon," but held that, even though the policy was created in Arizona, the mailing of the solicitation was a sufficient "minimum contact" for Virginia to assert jurisdiction.

## VENUE

■ The plaintiff has the burden of showing that venue is appropriate in this district, once the defendant has raised an objection. *United Coal Co. v. Land Use Corp.,* 575 F.Supp. 1148, 1158 (E.D.Va. 1983). The plaintiff claims that venue lies in this district under 28 U.S.C. § 1391(a) because, although neither plaintiff nor defendant resides here, the "claim arose" here.

Courts have little guidance in applying the language allowing venue in the judicial district "in which the claim arise," as that

provision was added to § 1391 in 1966. *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 812 (E.D.Va.1981), *aff'd*, 715 F.2d 142 (4th Cir.1983). What little guidance is available to courts in the Fourth Circuit comes by way of the Supreme Court's opinion in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

As noted in Annot., 59 ALR Fed. 320, 355 (1982), courts around the country have endorsed basically any of several different tests to determine where a claim arose.

> In determining the district in which a contract action arose for venue purposes, the courts have used the "weight of the contacts" test, the "significant contacts" test, the "substantial part" test, and also relied upon personal jurisdiction having been obtained over a nonresident defendant for purposes of suit.

Unfortunately, the Supreme Court in *Leroy* did not specifically endorse or reject any of these tests, instead analyzing the fact pattern before it under an amalgam of tests.

Two relatively recent decisions emanating from the Eastern District of Virginia have reviewed commentary and caselaw relevant to the issue. *See Hodson and United Coal, supra.* In both decisions, the courts noted that the Fourth Circuit Court of Appeals has not yet ruled on which of the major tests is appropriate for analyzing venue under § 1391. *Hodson*, 528 F.Supp. at 813; *United Coal*, 575 F.Supp. at 1160. One of the courts correctly concluded that the "identity test" applied by some courts (*see, e.g., Bastille Properties, Inc. v. Hometels of America, Inc.*, 476 F.Supp. 175 (S.D.N.Y.1979)), under which venue is held to be proper in a court if personal jurisdiction exists in that court as to the defendants, was implicitly rejected by the Supreme Court in *Leroy*. *United Coal*, 575 F.Supp. at 1159. The place of injury test also appeared to be rejected in *Leroy*, except as one of several factors to be considered, since it was not expressly considered by the court, and would appear to have weighed against the court's decision. Rather, the Supreme Court in *Leroy* ana-

lyzed a number of the relevant connections between the litigation and the districts and made the following pronouncement:

> In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the usual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff) may be assigned as the locus of the claim. 443 U.S. at 185, 99 S.Ct. at 2717.

The court also mentioned that the state law to be interpreted in analyzing the claim before the court should be a relevant factor.

> The merits of Great Western's claims may well depend on a proper interpretation of the State's statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere. 443 U.S. at 186, 99 S.Ct. at 2718.

■ Applying a "weight of contacts" test to the allegations before the Court, and looking at the factors specifically mentioned by the Supreme Court in *Leroy*, this Court determines that venue for the plaintiff's claim does not lie in this district. The contacts between this litigation and this district have already been enumerated: the contract was formed here and expected to be performed here, but the place of performance of the contract shifted to Kansas when the plaintiff was notified of the defendant's change of address. In terms of the availability of the witnesses, only one (Kirkman) is located in this district. The others—including the defendant and members of his family (who may be called upon to testify as to their whereabouts and intentions with regard to the defendant's domicile), all those individuals involved in the accident, and the insurance agent who

applied for and issued the defendant's auto policy which became effective after the accident—are located in Kansas. The only other evidence which might conceivably be related to this case would likely spring from the records of the plaintiff, which are located in the state of Washington. Considering the convenience of the defendant, there would appear to be no question that any trial would be far more convenient to the defendant if held in Kansas.

■ As to the law to be applied, the plaintiff is correct in arguing that the contract must be interpreted under Maryland law, since Maryland subscribes to the "lex loci contractus" choice-of-law doctrine. *Traylor v. Grafton*, 273 Md. 649, 660, 332 A.2d 651 (1975). However, if the defendant is indeed entitled to recover more than the $20,000 limit in the Maryland policy, such an outcome would spring not from an interpretation of the policy, but because

Kansas law requires such a result from policies issued to Kansas residents. In other words, it appears that the Maryland policy itself would not entitle the defendant here to any recovery from the plaintiff, and the only controversy existing between the parties is whether Kansas law—specifically Kan.Stat.Ann. § 40–284 [1]—required further underinsured motorist coverage because the change of address notification filed with the plaintiff meant that the Safeco policy had been "delivered or issued for delivery" in Kansas.

■ Consequently, this Court has determined that venue for this action lies in Kansas, not in this district. The remaining determination for this Court is whether the action should be transferred to the District of Kansas or be dismissed. 28 U.S.C. § 1406(a). The Court is instructed to transfer the case, rather than dismiss it, "if

1. Kan.Stat.Ann. § 40–284 provides:

40.284. Coverage relating to injury or death caused by uninsured motorist; rejection; renewal policies; providing for underinsured coverage; antistacking provision; exclusions or limitations of coverage. (a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization.

(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured

motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

(c) The insured named in the policy shall have the right to reject, in writing, the uninsured motorists coverage required by subsection (a) which is in excess of the limits for bodily injury or death set forth in K.S.A. 40–3107. Unless the insured named in the policy requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to the insured by the same insurer.

(d) Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident.

(e) Any insurer may provide for the exclusion or limitation of coverage when:

(1) The insured is occupying an uninsured automobile owned or provided for the insured's regular use;

(2) the uninsured automobile is owned by a self-insurer or the federal government;

(3) there is no evidence of physical contact with the uninsured motor vehicle;

(4) to the extent that workers' compensation benefits apply; and

(5) suit is filed against the uninsured motorist without notice to the insurance carrier.

it be in the interest of justice," and, "[g]enerally, courts will transfer such cases when it is clear where proper venue would lie." *United Coal,* 575 F.Supp. at 1162. The decision whether to transfer or dismiss is "committed to the discretion of the Court acting in the interests of justice." *Hayes v. RCA Service Co.,* 546 F.Supp. 661, 665 (D.D.C.1982); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 789 (D.C.Cir.1983). In exercising this discretion, district courts have repeatedly held that the burden is on the plaintiff to show why transfer, rather than dismissal, would be in the interest of justice. *M. Dean Kaufman, Inc. v. Warnaco, Inc.,* 299 F.Supp. 722, 724 (D.Conn. 1969), *Nizami v. Woods,* 263 F.Supp. 124, 125 (S.D.N.Y.1967); *Anno.,* 3 ALR Fed. 467 at § 28 (1970). *See also D'Amico v. Treat,* 379 F.Supp. 1004, 1008 (N.D.Ill. 1974), *aff'd,* 510 F.2d 976 (7th Cir.1975):

> Further, the plaintiff has failed to supply this Court with any reason why it would be more in the interest of justice for this Court to transfer the instant action rather than to dismiss it with prejudice ... This failure on the part of the defendant is sufficient reason by itself for the dismissal of the instant case.

In this case, the plaintiff has presented this Court with no reasons why the case should be transferred, rather than dismissed, if venue is improper. Therefore, dismissal without prejudice would seem appropriate.

Additionally, transfer would be inappropriate here because, as will be demonstrated in the following section of this Memorandum, the pendency of the dispute in Kansas state court would result in the transferee federal court staying this action. District courts have held that a transfer would not serve the "interest of justice" where the case, if transfered, would be subject to dismissal in the transferee court. *See, e.g., Viaggio v. Field,* 177 F.Supp. 643, 645–646 (D.Md.1959):

> ... [I]t would not be in the interest of justice to transfer this case to the Eastern District of Pennsylvania as no hearing would be had on the merits there, and in fact it would be an injustice to the defendant in requiring him to engage

other and additional local counsel there for the defense of the case.

The pendency of the action filed by the defendant in Kansas state court would make it inappropriate for a federal court to address the merits of this case. Therefore, the case will be dismissed without prejudice, rather than transferred.

ABSTENTION

■ This Court has determined that federal proceedings in this case should be stayed due to the pending litigation in Kansas state court on dual grounds: first, because this case involves the interpretation of Kansas state law, and second, because the pending federal litigation duplicates pending state litigation.

As mentioned above, the outcome of this litigation revolves around the interpretation of the phrase "delivered or issued for delivery" in Kansas under Kan.Stat.Ann. § 40–284. While the Court has not researched caselaw interpreting that section of the Kansas statutes, copies of the summary judgment briefs prepared for the Kansas state court indicate that little precedent exists to aid a court in determining whether the defendant's notification of his change of address and the plaintiff's sending a change of address form to the defendant made the Safeco policy one "delivered or issued for delivery" in that state. Accordingly, it would be wise for this Court, or for the United States District Court for the District of Kansas, to abstain from predicting the Kansas state court's ruling on this issue. *Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ Even if the interpretation of the relevant portion of the Kansas statute does not present an unsettled question of law, however, this Court (and any possible transferee court) should abstain from considering this dispute under another doctrine, called the "fourth abstention" doc-

trine by one commentator. 17 Wright & Cooper, *Federal Practice & Procedure*, § 4247 at 502 (1978). As noted by the court in *Companion Life Ins. Co. v. Matthews*, 547 F.Supp. 836, 839 (S.D.N.Y.1982), this form of judicial nonintervention is not strictly a doctrine of "abstention" since it

> rests on considerations of sound judicial administration rather than on constitutional implications or principles of federalism and comity.

Under this doctrine, a federal suit is dismissed "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. But, as the Supreme Court noted there and in *Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983),

> ... the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, and ... the federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them.

As explained in *Cone Mem. Hosp.* and in *Colorado River*, the Court should only refuse to exercise its jurisdiction under "exceptional circumstances," considering a list of factors which were recently summarized in *Kruse v. Snowshoe Co.*, 715 F.2d 120, 123 (4th Cir.1983). These factors include the following: (1) whether a state court has assumed jurisdiction over property, (2) the relative convenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which the concurrent forums obtained jurisdiction, (5) whether state or federal law will govern the outcome of the litigation, and (6) the adequacy of the state court proceedings to protect federal plaintiffs' rights.

■ The first three considerations listed above would appear to weigh against abstention in this case: this is an *in personam*, as opposed to an *in rem* proceeding, in both courts; the federal court in Kansas would appear to be no less convenient than the state court in Topeka; and final resolution of either the state or federal litigation would result in an appealable determination of all disputes between the parties (foreclosing any piecemeal resolution of the controversies).

As to the fourth factor—the order in which the respective courts acquired jurisdiction over the cases before them—this would also appear to weigh in favor of a federal court's proceeding to address the merits of this case (since the federal action was filed first). However, a closer reading of *Cone* shows that the strict time of filing is not the only consideration.

> This factor ["priority"], as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. 460 U.S. at 21, 103 S.Ct. at 940.

With regard to the amount of progress made in the federal action, it is worth noting that this Memorandum constitutes the first substantial ruling by this Court in this case.

> Furthermore, as another court as stated, Priority of filing is thus only one factor to be considered in the exercise of its discretion, and in this case deserves minor weight.

*Companion Life Ins.*, 547 F.Supp. at 840. In *Companian Life*, the district court went on to note that the priority of filing deserved little consideration when the first action was brought under the federal Declaratory Judgment Act, as was the complaint not before this Court.

> ... In another context, Justice Brennan spoke against permitting "the federal declaratory judgment [to become] a prize to the winner of a race to the courthouses."
>
> ... By holding, in this context, that the timing of the action is determinative, this Court would be countenancing Companion's actions and rewarding it for winning a race to the courthouse which it had completed before its adversary heard the starting gun. *Id.* at 841.

The fifth factor listed in *Kruse* weighs heavily against federal court treatment of this dispute, in light of the pending state action. As mentioned above, this litigation turns on a question of state law, and no federal policy is implicated. It is rare that a federal policy assigning an area of commerce to state legislatures is stated with such specificity, but Congress, at 15 U.S.C. § 1012, has explicitly stated that the area of insurance is—with irrelevant exceptions—completely within the domain of state legislatures.

As to the sixth factor, there has been no indication that the pending state court proceedings would be inadequate in any fashion, and, indeed, no such inadequacy can be imagined.

There is one other factor which counsels this Court to rule that abstention is appropriate. This action was brought for a declaratory judgment, and several courts have held that abstention under the pending state action doctrine is uniquely appropriate when the federal action was filed under the Declaratory Judgment Act.

> If a state action is already pending in which all issues can be effectively determined, a federal court may refuse to entertain a declaratory judgment action, but this rests on the special nature of declaratory judgments and the fact that there is no need for that procedure in the situation outlined.

17 Wright, Miller & Cooper, *Federal Practice & Procedure*, § 4247 at 503–04 (1978). Thus, the court held in *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir.1980), that another pending action made consideration of a declaratory judgment action improper.

> In this case we believe that even if IH [plaintiff] had successfully carried its burden of establishing a justiciable controversy, declaratory judgment relief would not be appropriate at this time. A declaratory judgment should issue only when it will serve a useful purpose ... Because of the current status of the prior patent suit between Deere and IH

there is a distinct possibility that the declaratory judgment sought here by IH would not serve a useful purpose.

This doctrine—forbidding federal court consideration of a declaratory judgment action when a pending action will result in resolution of the same dispute—has been applied in a virtually identical case in which an insurance company sought a declaratory judgment limiting its liability under a policy already at issue in a state proceeding. *State Farm Mut. Ins. Co. v. Scholes*, 601 F.2d 1151 (10th Cir.1979).

Accordingly, the Court determines that the action before it should be dismissed without prejudice, on the grounds of improper venue, and because the pending state action will answer an apparently unsettled question of state law and make a declaratory judgment in this action (if merited) inadvisable.

### ORDER

In accordance with the Memorandum attached hereto, it is this 1st day of August 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the name of the plaintiff BE, and the same IS, hereby AMENDED to "Safeco Insurance Company of America;"

2. That the complaint in the above-cited action BE, and the same IS, DISMISSED without prejudice; and

3. That copies of this Memorandum and Order be sent to all parties.